[File No. 7284]

ESTHER LOSTEGAARD, Respondent, v. H. F. BAUER and Dale Bauer, Appellants.

(51 NW2d 761)

Opinion filed February 21, 1952

*James R. Jungroth* and *Quentin N. Burdick,* for appellants.
*Bruce M. Van Sickle,* for respondent.

GRIMSON, J.   This is an action for damages resulting from an automobile collision.   The allegations of the complaint are that on the evening of Oct. 29, 1949, about 6:30 P.M. the defendant, H. P. Bauer, was the owner of a 1½ ton, 1935, Dodge truck, equipped with an 8 by 12 foot grain box and that the defendant, Dale, his son, was driving said truck in his father's business on Highway No. 83, about 7½ miles south of Minot.   That the truck was loaded with approximately 200 bushels of grain.   That at said time and place the plaintiff was traveling in a northerly direction on said highway in a legal and careful manner.   That the defendant, Dale Bauer, had negligently and unlawfully left his truck standing still on the right hand side of the highway, facing north, without lights or warning.   That because of the negligence, and carelessness of said defendant in so doing the plaintiff's automobile collided with the truck and was badly damaged and rendered valueless.   Plaintiff claims damages therefor in the sum of $500.00.

For a second cause of action because of said accident she claims to have suffered various injuries to her person and claims $15,000.00 damages on that count.

The defendants answer admitting the collision, the ownership and operation of the truck, denying negligence and alleging contributory negligence on the part of the plaintiff.

Defendants moved for judgment on the pleadings which was denied.   At the close of the plaintiff's case and again at the close of all the evidence defendants moved for a directed verdict of dismissal on the grounds that the evidence showed that the plaintiff was guilty of contributory negligence as a matter of law.   Both motions were denied.

The case was tried to a jury which brought in a verdict for the plaintiff in the sum of $797.60.

Thereafter a motion was made by the defendants for a judgment notwithstanding the verdict. That motion also was denied. This appeal is from the judgment and from the order denying that motion. The grounds argued are the insufficiency of the evidence to justify the verdict, and errors of law in the denial of defendants' several motions.

No contest is raised on the negligence of the defendants in leaving the truck parked without any warning signs. The real question at issue upon which all the specifications of error are based is whether the evidence showed that the plaintiff was guilty of contributory negligence as a matter of law, or whether the question of contributory negligence was properly submitted to the jury. That question must be determined upon the evidence before the court at the close of the case when the motion for a directed verdict was made. Weber v. United Hardware and Implement Mutuals Company, 75 ND 581, 31 NW2d 456.

It appears from the evidence that the plaintiff was teaching school in Bismarck and that on Oct. 28, 1949, she, accompanied by her mother, left Bismarck at 4 o'clock P. M. for a visit to her people at Maxbass, North Dakota. She drove north towards Minot on U. S. Highway No. 83, a good blacktop road. About $7\frac{1}{2}$ miles south of Minot she crashed into the rear of the truck of the defendant, H. P. Bauer. His son, defendant Dale Bauer, had been driving the truck, which was loaded with about 200 bushels of wheat, weighing about 12,000 pounds, to an elevator at Minot. He had burned out the right, rear wheel bearing of the truck and had stopped at the point of the collision. The nearest turnout was a half mile away. Dale Bauer then hitch-hiked to Minot and back to his father's place at Max to get some tools. He returned in his own car and started to make repairs but when he saw that the sun was getting low he went into Minot to get flares. He left the truck facing north on the right hand side of the highway, without lights or warning of any kind.

Miss Lostegaard testified that the collision occurred about a quarter to seven o'clock in the evening; that she was driving

about 35 miles an hour; that it was pitch dark. She claims she first saw the truck when it appeared "within the distance of my dimmers which is 75 feet." She further testified as follows: "I was driving along and had dimmed my lights to meet an on-coming car, and within the distance of my dimmers, I saw this truck parked on the highway and I put, applied my brakes, and when I saw that I couldn't come to a complete stop, I turned my car to the left and tried to avoid the truck. I saw I couldn't make it because of the on-coming car, and because there wasn't room on the highway with the truck parked there."

Allen Freelander testified that he had been following Miss Lostegaard for four or five miles, driving at the rate of about 40 miles an hour and had been gradually catching up to her. He had his lights on, tilting them for cars he met going south. He said it was dark and the testimony is that it was cloudy. Rain began falling within ten minutes after the collision. Although only about 300 feet behind Miss Lostegaard, Freelander did not see the parked truck until the collision which caused dust to arise around the car.

Frank Blocher was coming along the highway at the time. He testified there were four or five vehicles between him and the truck at the time of the accident. He took the plaintiff and her mother to a hospital at Minot. He testified:

"Q. Was it dark outside at that time?

"A. Well, it was dark. I mean we all had our headlights on.

"Q. Using dimmers when you met cars?

"A. Yes, indeed.

"Q. Any cars approaching from Minot?

"A. O, during the course of the time that I was there there were cars that came by, and previously I had met a few cars."

On cross examination he testified:

"Q. As to the time of the acicdent you are not prepared to tell the court and jury because you don't know?

"A. I do know it was in the vicinity of seven o'clock. Any-time anything like that happens, I always look at my watch. Exact minute, no, I can't tell you."

A patrolman and a Deputy Sheriff were called to the scene. Their evidence is that the truck was sitting on the blacktop with the right hind wheel on the edge of the pavement, the front angling a little to the right bringing the right front wheel over the edge of the blacktop onto the shoulder of the highway. No tracks were ascertainable but it had rained before the patrolman got out there. The highway was 25 feet wide at that point. The homemade grain box on the truck was $7\frac{1}{2}$ feet wide extending out over the wheels on both sides. The left side of the grain box was about six feet east of the center line of the highway. The highway was straight and level for a mile south of the collision and three-fourths of a mile to the north.

August Tiedtke, the patrolman, testified that he found that "the car had run under the left, rear corner (of the grain box on the truck) with the hood being pushed up against the windshield." The testimony shows that Dale Bauer had jacked up the right rear of the truck and taken the right rear wheel off. There is no evidence that the truck had even been pushed off the jack. The plaintiff and her mother were, however, thrown forward against the windshield, breaking the glass.

Defendant, Dale Bauer, testified that when he "saw the sun starting to do down" he drove into Minot for flares. Not until he inquired at the third garage, just about six o'clock, did he get the flares. Then he went back to his truck. He testified that he had his parking lights on but was able to see about a quarter of a mile without them. He parked his car in the ditch directly across from the truck, facing south. Then he says, "I got out of the car and went to the back end and lifted up the lid of the trunk."

"Q. Were there any cars going either north or south on that highway at that moment?

"A. Yes, one went north just as I raised up the hood on my car.

"Q. One going north? What kind of vehicle was that, do you know or do you recall?

"A. No.

"Q. Then you saw some vehicle passing as you opened up the trunk?

"A. Yes.

"Q. Do you recall any cars coming from Minot . . . going south?

"A. No, there were none. . . .

"Q. Then you do recall this vehicle that went from the south to the north?

"A. Yes.

"Q. Just as you were opening your trunk?

"A. Yes.

"Q. What is the next thing that happened?

"A. Then I just reached down for the flares and the other car hit my truck.

"Q. And by 'the other car' you mean the Lostegaard car?

"A. The Lostegaard car.

"Q. Then what did you do?

"A. I took the flares and went over to the truck . . . to set them out."

The defendant contends that the evidence and even the pleadings show that the plaintiff was negligent as a matter of law, and, therefore, could not recover. His main contention is that the plaintiff did not have proper control of her car and was driving too fast to be able to stop within the clear distance ahead. He cites as authority supporting his contention the North Dakota cases of Billingsly v. McCormick Transfer Co. 58 ND 913, 228 NW 424; Bagan v. Bitterman, 65 ND 423, 259 NW 268 and Schaller v. Bjornstad, 77 ND 51, 40 NW2d 59.

In the Billingsly case this court lays down two rules which have been followed since and which are supported by all of the authorities. First, that "Contributory negligence is a complete bar to a recovery for damages sustained in a collision alleged to have been caused by the negligence of another" and, second, that "When negligence is involved and the facts and circumstances are such that but one inference can be drawn fairly and reasonably therefrom negligence becomes a matter of law." In that case the defendant's van was parked on the right side of

the road close to the shoulder. There were 19 to 23 feet of good, solid road to the left of the van. There was a dispute in the testimony as to whether there were any lights on the van. The plaintiff, with three others, was riding in his practically new Ford coupe. About 10:30 P. M. they crashed into the defendant's van. Plaintiff's lights were in good order and the road was straight. This court said:

"Stormy night, dusty roads, passing vehicles, distracting circumstances, sudden emergencies are all non-existent. . . . It is clear from the plaintiff's own testimony if he were keeping a lookout he would have seen the van in ample time to have avoided it and passed it on the road . . . it is clear the parties (plaintiff) were negligent in the outlook kept and that if it were not for his negligence there would have been no collision."

In the Bagan case the defendant, Bitterman, was returning from Fargo, driving a cattle truck and about 11:00 P.M. had battery trouble. He parked the truck on the right side of the road. The plaintiff, about 2:00 A.M. came up behind this truck and in attempting to pass it struck the left rear side of the truck. Of his testimony the court said:

"He stated his lights were in good shape, and lighted the road for a distance of 200 feet; he was traveling at the rate not to exceed 25 miles per hour; that he was keeping a lookout and yet he did not see the truck until he was upon it. Others testified they saw the truck for 100 feet ahead. Either he was driving at an excessive rate of speed or was not driving carefully or his lights were poor or he was not keeping a lookout. There was no object to obstruct his vision. He said his car was in good condition and his brakes were working. The physical facts are such that it is clear he was guilty of contributory negligence."

In the Schaller case the plaintiff had parked his car on the side of the road. The driver of defendant's truck drove into the rear end of that car. He had shortly before passed a car going in the opposite direction and dimmed his lights. This court said:

"There is no testimony on the part of the defendant that he was exercising any particular caution or keeping any special

lookout . . . It is undisputed, however, that the highway was level and perfectly straight. There were no dips or swells. There was no obstruction to vision except such as was produced by the darkness, atmospheric conditions and the lights . . . The traffic was not congested; Erlandson (The driver of defendant's truck) was in no danger of getting entangled with other vehicles that were going or coming . . . The highway was wide and hard surfaced. He did not stop. He did not even slow down.in .any appreciable degree if at all. . . . A careful consideration of the evidence brings us to the conclusion that the defendant Erlandson failed to exercise due care commensurate with the situation and the circumstances and that his failure to exercise such care contributed directly to the collision and that the collision would not have occurred if he had exercised such care."

It is clear that the decision of this court in each of these cases was based on the fact that the only inference that could be drawn from the evidence was that there was contributory negligence on the part of the plaintiff in each case.

In the Billingsly case, while holding negligence became a matter of law when only one inference can be drawn from the evidence, the court added:

"The question of negligence is for the jury to determine when reasonable men might draw different conclusions from the facts. Heckman v. Evenson, 7 ND 173, 73 NW 427; La Point v. Hodgins Transfer Co. 48 ND 1032, 188 NW 166; Axelson v. Jardine, supra." (57 ND 524, 223 NW 32.)

"In determining whether a motorist was contributorily negligent in failing to slow down or to observe a stationary vehicle obstructing the highway ahead, no hard and fast rule can be laid down, but surrounding circumstances and the facts of the particular case must be considered. . . . 4 Blashfield Cyclopedia Automobile Law and Practice, Contributory Negligence, Sec 2755, p 315.

In Zurfluh v. Lewis County, 199 Wash 378, 91 P2d 1002, the Washington Court said: "The question of proximate cause is usually for the jury upon the facts. It is a mixed question of

law and fact which must be submitted to the jury under proper instructions, unless the facts are undisputed and the inferences to be drawn from them are plain and not open to doubt by reasonable persons. Cooley on Torts, Vol. 1, 3rd ed, p 111; Hellan v. Supply Laundry Company, 94 Wash 683, 163 P 9."

In Buohl v. Lockport Brewing Co., 349 Pa 377, 37 A2d p 524, the court said: "We have consistently held that a fixed rule cannot be laid down which will determine in every instance the person legally responsible for a rear-end collision on a highway at night between a parked vehicle and one that is moving. Nelson v. Damus Bros. Co. Inc., supra; Harkins v. Somerset Bus Co., 308 Pa 109, 162 A 163; Farley v. Ventresco, 307 Pa 441, 161 A 534; Kazan v. Wilkes-Barre Railway Corp. 347 Pa 232, 32 A2d 32, affirming, per curiam, 151 Pa Super 38, 29 A2d 221. Temporary blinding caused by bright lights of an on-coming or parked vehicle has been recognized as a legally sufficient excuse for failing to stop within the assured, clear distance ahead. Kazan v. Wilkes-Barre Railway Corp., supra; Nelson v. Damus Bros. Co. supra; Farley v. Ventresco, supra; Boor v. Schreiber, 152 Pa Super 458, 461, 33 A2d 648."

In the case at bar the evidence shows clearly that the plaintiff was driving north on a good, paved highway. She says she was driving 35 miles an hour. She is somewhat corroborated on that by Freeland who testified that he followed her for three or four miles at about forty miles an hour and gradually caught up to her. Both Freelander and Blocher, who came close behind plaintiff corroborate plaintiff that it was dark or getting dark. Blocher says that it was at the very end of the "dusk period" so that all cars were using lights. She says it was 6:45 P.M. Blocher said it was a little prior to seven. They also corroborate her on the testimony that she was meeting cars with head lights on coming from the north. Freelander was asked: "Q. Do you recall that you were meeting a car at the time Miss Lostegaard was? Ans. That's right." Miss Lostegaard had dimmed her lights for that car. She had not seen the parked truck until it came into the view of her dimmers, 75 feet ahead. She testifies that when she saw the parked truck she applied her brakes. Then when she saw she couldn't come to a complete stop she

claims she turned her car to the left in order to avoid the truck but that she had to abandon that because of a car coming from the north. The position of the car after the collision under the left rear end of the grain box tends to support her testimony that she turned towards the left before the collision.

The defendant's version of the circumstances surrounding the collision differs somewhat. He was coming south from Minot with the flares. He says that he could see a quarter of a mile without lights but that he had his parking lights on. Then he drove his car into the ditch directly across from the parked truck facing south. He says that he immediately got out of his car, went to the back end of his car and lifted up the trunk cover. As he did so he claims that one car drove north. He then reached down into the trunk for the flares and just then the Lostegaard car hit his truck.

According to that testimony the car that he says was going north would have been just ahead of Miss Lostegaard so that she could not possibly have seen the truck until that car turned out to pass it. Then when she tried to turn to pass the truck she would be facing the lights of defendant's own car in the ditch which might cause her to hesitate a few seconds during which her car moved forward into the truck.

The plaintiff, Miss Lostegaard, was confronted with a real emergency when that big grain truck loomed up in her lights, 75 feet ahead. At 35 miles an hour she would cover that 75 feet in 1-46/100ths. seconds. That speed of 35 miles an hour was reasonable and lawful under all the circumstances of the case except, perhaps, the circumstance of the parked truck. If a reasonable and careful person could have seen the parked truck under the circumstances defendants contend she should have anticipated such an obstacle. But in addition to the parked truck, according to defendants' version of the evidence, an automobile had just passed her going north and she was facing defendant's car in the west ditch, and, according to her own version, she was facing the lights of an automobile coming from the north and did not have room to pass. Even if she were bound to anticipate a parked vehicle on the highway she could not be said as a matter of law to be bound to anticipate all the circumstances that were

confronting her. Possibly she could have stopped her car in that distance of 75 feet or successfully passed the truck if that parked truck had been the only circumstance facing her. In a situation of that kind a person's mental faculties and physical reactions cannot be expected to respond as quickly or as correctly as if there had been no distractions and time for deliberation. The plaintiff cannot be held to the same accountability as she would be under the normal circumstances of coming up to a parked truck with no other distractions.

In Williams v. Campbell, Louisiana App 185 So 683, involving a rear end collision between plaintiff's truck and defendant's parked trailer at night, the evidence showed that the plaintiff was driving 25 miles an hour. When he was approximately 50 feet from the defendant's trailer, whose presence he had not observed, he was blinded by the brillant lights of a third motor. When his eyes again focused upon the road he saw the trailer ahead but too close to avoid the collision although he applied his brakes. The court said:

"It requires an appreciable lapse of time for a motorist, after realizing he is confronted with an emergency, to coordinate his mental faculties with his physical power, and through application of the brakes bring his car to a stop. In the meantime, the car is moving forward and reducing the distance between it and the object ahead. Human resolutions may not be formed and executed in the same breath. One may not be expected to act calmly and form as accurate conclusions in the face of a sudden emergency as would be the case when acting deliberately. Be this all as it may, we do not think the operator of the Texas Company's (the plaintiff's) truck negligent because he failed to apply his brakes more quickly than he did after the emergency arose because of the movements of the third motor vehicle."

In Marron v. Elmquist, 132 Pa Super 12, 200 A 207, the court said:

"Negligence will not be imputed to a plaintiff because of his conduct when faced with a sudden and unexpected emergency which he had no reasonable grounds to anticipate."

"Where a traveler upon or across a highway is confronted

by a sudden emergency created by the negligence of another and not by his own fault, he is not held to the same degree of care and prudence as is ordinarily demanded of a person who has time for deliberation and the full exercise of his judgment, and he is not guilty of contributory negligence if he acts as an ordinarily prudent person would act under like circumstances." 61 CJS Motor Vehicles, Sec 460, p 14.

"Without denying that in many situations and under many conditions a driver of an automobile is as a matter of law guilty of negligence in driving at such a rate of speed as prevents stopping within time to avoid an obstruction within the range of his vision, there is a strong tendency in the recent cases to refuse to adopt that as a universal formula or a hard and fast rule. Thus, it has been held to have no application in case of emergencies creating unexpected hazards." 5 Am Jur Sec 263, Automobiles, p 647.

The case at bar shows a steady flow of traffic both ways, bright lights, distracting circumstances and sudden emergencies, none of which were existent in the Billingsly, Bagan and Schaller cases. Those circumstances clearly differentiated the instant case from those cases and bring it within the rule laid down in the authorities last cited.

In the case of Rose v. Greb, 195 Ark 532, 112 SW2d 961, the driver of defendant's truck and trailer passed a stalled car on the highway. The driver of the stalled car, a woman, signaled the truck driver for help. The truck driver drove his truck and trailer some sixty feet beyond the automobile, switched off the truck and trailer lights except the headlights and a tail light covered with mud and went back to help. The trailer was painted aluminum color. The pavement was black. The plaintiff came along in a new Pontiac automobile, equipped with good brakes, lights and windshield wiper in good operating condition. It was about 7:30 P.M. dark and rainy, visibility poor. Defendant slowed down to about thirty miles an hour but did not see the truck or trailer until within a few feet of it when he did all he could to stop the car but failed. He could not turn to the left because of an on-coming car. Defendant argued that to travel

thirty miles an hour in rain after dark, that failure to see the reflection of the light on the aluminum colored trailer in time to stop and that the plaintiff, distracted by the stalled car, had not been keeping a proper lookout to the front, showed the plaintiff guilty of contributory negligence as a matter of law. The court said:

"All these facts and circumstances and the inferences that may be reasonably drawn from them, which are called to our attention, were matters for the jury to consider in determining whether appellee and the driver of the Pontiac were guilty of contributory negligence."

In the case at bar there was conflict in testimony on the time and degree of light, the exact circumstances of the traffic immediately prior to the accident and other matters. There were circumstances from which reasonable men might draw different conclusions. The question of the contributory negligence of the plaintiff was for the jury to determine. Jondahl v. Campbell, 61 ND 555, 238 NW 697; Skramstad v. Miller, 77 ND 450, 49 NW 2d 652; Tresise v. Ashdown, 118 Ohio State 307, 160 NE 898, 58 ALR 1476.

The judgment of the District Court is affirmed.

MORRIS, Ch. J., and BURKE, CHRISTIANSON and SATHRE, JJ., concur.