Jacob WOLF, Plaintiff and Respondent,

v.

NORTHERN TANK LINES, INC., Defendant and Appellant.

No. 7975.

Supreme Court of North Dakota.

Jan. 26, 1962.

Rehearing Denied March 22, 1962.

**676**

Conmy & Conmy, Bismarck, for defendant and appellant.

Palda, Palda, Peterson & Anderson, Minot, for plaintiff and respondent.

STRUTZ, Judge.

This is an action for personal injuries suffered by the plaintiff in a collision between an automobile operated by the plaintiff and a truck-tank trailer filled with propane gas, owned by the defendant and operated by one of its employees. The accident occurred at night on U. S. Highway No. 52 about seven miles northwest of Minot.

On the night of the accident, the plaintiff had left his home in Burlington at about 9:15, spending the next two hours in a bar where he admits having consumed two bottles of beer. He left the bar at about 11:20, and sat in his parked automobile in front of the bar until midnight. During the time he was sitting in his parked

car, he was trying to determine how much cement would be required for a foundation which he was planning to place under his home. At midnight, he drove southeast on U. S. Highway 52 toward Minot at a speed of approximately fifty miles an hour. As he was driving along the highway, he collided with the rear left wheels of the defendant's tank trailer, striking the defendant's vehicle with such force that he pushed the dual wheels on the left side of the defendant's tanker together so that the wheels would not rotate.

The main portion of the road at the point of impact is twenty-five feet wide, with eight-foot shoulders on either side. Two approaches join this highway with a business establishment on the southwest side of the highway known as the "Speedway Cafe." These two approaches are more than 1,000 feet apart, the one being designated in the evidence as the "west approach" and the other as the "east approach."

The vehicle of the defendant with which the plaintiff collided had an over-all length of fifty feet, a width of eight feet, and a height of twelve feet. The vehicle was equipped with sixteen lights, including the parking lights, all of which, except the parking lights, were burning at the time of the collision. Each side of the trailer was equipped with three clearance lights which the evidence shows were illuminated.

The driver of the defendant's truck had stopped at the Speedway Cafe and had parked his transport on the parking area. After returning to the vehicle, he started up the slight incline from the parking area to the highway. The driver of this vehicle testified that, as he stopped for the stop-sign before entering upon the highway, he saw the lights of an approaching vehicle to the northwest. He estimated that this vehicle was from one-fourth to one-half mile away when he began to pull onto the highway. He further testified that, just before he was struck by the plaintiff, he had shifted from low to the next gear and

that, in the gear to which he had shifted, he could travel at a speed of from three to five miles an hour.

There is a conflict of evidence as to whether the defendant's truck, as it was driven upon the highway, had been completely straightened out before the collision. The driver of the truck maintains that he had completely straightened out the transport and was driving down the righthand lane, whereas an eyewitness to the collision, testifying for the plaintiff, says that the defendant's tractor had straightened out on the highway but that the trailer which it was pulling was still at a slight angle. The eyewitness further testified that he had stopped his vehicle on the southeast approach to Highway 52 from the Speedway Cafe and that his lights were shining directly across the highway as the defendant's truck proceeded onto the highway. In other words, the lights from his car were shining directly across the highway between the truck and the approaching vehicle of the plaintiff.

The plaintiff testified that he did not see the defendant's truck at any time, but that as he neared the point of collision he suddenly saw an object that looked like a tire in front of him on the highway. He applied his brakes, leaving brakemarks on the pavement of 102 feet in length from the point at which they were applied to the point of collision. After the impact, the plaintiff's car skidded an additional sixty-two feet from the point of collision and came to rest against a utility pole located on the left of the highway.

The evidence shows that the highway to the northwest of the point of collision, the direction from which the plaintiff was coming, was level, with an unobstructed view of the point of impact for a distance of from one-quarter to one-half mile. There was no oncoming traffic which might have blinded the plaintiff, the only oncoming vehicle having passed the spot where the collision occurred while the plaintiff still was a considerable distance away.

At the close of all of the evidence, the defendant moved for a dismissal of the plaintiff's action on the ground that the evidence, viewed in the light most favorable to the plaintiff, showed that the plaintiff was guilty of contributory negligence; that the plaintiff had an unobstructed view of the defendant's truck-trailer for one-half to one-fourth mile; that the plaintiff negligently failed to see that which was in plain sight to be seen; that the plaintiff failed to maintain a proper lookout; that he operated his vehicle at a speed which made it impossible for him to stop within the assured, clear distance ahead; and that plaintiff, in the exercise of even slight care, would have avoided the defendant's truck-tank trailer since the highway to the left of the defendant's vehicle was open and unobstructed. This motion was resisted by the plaintiff and was thereupon denied by the court.

The defendant then moved for a directed verdict on the same grounds which had been urged in support of its motion to dismiss, which motion was again resisted by the plaintiff and denied by the trial court.

The matter thereupon was submitted to the jury and a verdict was returned for the plaintiff. Defendant then moved to set aside the verdict and for judgment for the defendant, which motion was denied. This appeal then was taken from the judgment and from the order of the court denying the defendant's motion for judgment for the defendant.

Upon this record, the defendant contends that the plaintiff was negligent as a matter of law, urging that the plaintiff's negligence contributed proximately to the collision and the plaintiff's injuries.

■ Questions of negligence and contributory negligence ordinarily are questions of fact for the jury unless the evidence is such that reasonable men can draw but one conclusion therefrom. Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761; Cose v. Towner County (N.D.), 102

N.W.2d 538; Olson v. Kem Temple Ancient Arabic Order of Mystic Shrine, 78 N.D. 263, 49 N.W.2d 99; Rettler v. Ebreck (N. D.), 71 N.W.2d 759.

■ Therefore, if there is any reasonable explanation, consistent with the proof, which will account for the happening of the accident without the necessity of imputing negligence to the plaintiff, the question is one for the jury.

■ This court has held that no hard and fast rule can be laid down to determine whether a motorist is guilty of contributory negligence in failing to stop or turn aside to avoid a collision with an object upon the highway. Each case must be decided upon its own particular facts and circumstances. Lostegaard v. Bauer, supra; Schaller v. Bjornstad, 77 N.D. 51, 40 N.W.2d 59. See also 60 C.J.S. Motor Vehicles § 291, p. 687.

We must therefore determine whether the plaintiff was guilty of contributory negligence as a matter of law on the facts and circumstances shown by the evidence in this case.

According to the plaintiff's own testimony, he was driving at a speed of forty-five to fifty miles an hour; that the view in the direction in which he was driving was unobstructed for more than a quarter of a mile; that there was no oncoming traffic on the highway; that, as he neared the first approach to the Speedway Cafe, he slowed down slightly but that, after passing this first approach and seeing no traffic on the highway ahead of him, he again increased his speed; that he did see a set of headlights shining directly across the highway at the farther approach but that he nevertheless increased his speed back to his normal driving speed, which the testimony shows was forty-five to fifty miles an hour; that the lights from the car at the farther approach did not blind the plaintiff; and that the brakes on the plaintiff's vehicle had recently been repaired and were in good operating condition.

The testimony shows that the rear of the defendant's transport was fifty-seven feet from the stopsign at the time of impact. Since the transport was fifty feet in length, the front end of the transport therefore had traveled fifty feet farther than the rear of the transport from the stopsign. The evidence further shows that the defendant's vehicle traveled from a stationary position at the stopsign to a speed of from three to five miles an hour at the moment of impact. Assuming that the entire 107 feet which the front of the defendant's vehicle had traveled from the stopsign had been covered at a speed of five miles an hour, instead of three to five miles an hour as the evidence shows, the defendant's truck would have covered this distance at seven and one-third feet per second and it would have taken almost fifteen seconds to reach the position which the defendant's truck occupied on the highway at the moment of impact. The plaintiff, at the same time, traveling at forty-five miles an hour—his minimum speed as shown by his own testimony—would have traveled nine times as far as the transport, or 963 feet from the time the transport started to enter upon the highway. Thus the plaintiff had to be at least that distance from the point of impact when the defendant started to enter upon the highway. Defendant's vehicle would have been in plain view of the plaintiff at that time, since the plaintiff also testified that there was an unobstructed view of the point of impact for more than a quarter of a mile from the direction from which the plaintiff was approaching. And yet, although the defendant's vehicle had its lights burning, the plaintiff testified that he saw nothing until just before the moment of impact.

It is clear, from the plaintiff's own testimony, that if he had been keeping any kind of lookout he would have seen the defendant's vehicle in ample time to stop, or at least he would have been able to pass

it on the left since there was no oncoming traffic. The evidence shows that the entire left side of the highway, of over twelve feet of pavement plus the left shoulder of eight feet, was open and unobstructed.

The physical facts testified to by and in behalf of the plaintiff, even when viewed in the light most favorable to the plaintiff, are such that no conclusion can be reached other than that he was careless and negligent. If the plaintiff's carelessness did not actually cause the accident, it at least contributed to it to such an extent that without the plaintiff's negligence there would have been no collision and the plaintiff would not have been injured. If the plaintiff had maintained a reasonable lookout, he surely would have seen the defendant's vehicle in time to stop or to avoid it and pass it on the left. Billingsley v. McCormick Transfer Co., 58 N.D. 913, 228 N.W. 424.

■■■ Since there is no reasonable explanation, consistent with the proof, which would account for the happening of the accident without the necessity of imputing negligence to the plaintiff, the plaintiff was guilty of negligence as a matter of law and cannot recover. Contributory negligence is a complete bar to recovery of damages alleged to have been caused by another's negligence. Bagan v. Bitterman, 65 N.D. 423, 259 N.W. 266.

The judgment and order appealed from are reversed.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.

On petition for rehearing.

STRUTZ, Judge.

The plaintiff has filed a petition for rehearing in this case, in which he takes issue with some of the statements of fact as set forth in our opinion. The court has carefully re-examined the record, and finds most of the objections of the plaintiff to be without foundation or merit.

However, our opinion in any event would be the same. There is no reasonable explanation, consistent with the plaintiff's own evidence, which must be taken as true, which would account for the accident, without the necessity of imputing contributory negligence to the plaintiff.

The petition for rehearing is denied.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.