Arthur VOGEL, Plaintiff and Appellant,

v.

Johnny BERTSCH, Defendant and Respondent.

No. 8125.

Supreme Court of North Dakota.

Sept. 10, 1964.

Rehearing Denied Oct. 1, 1964.

Hjellum, Weiss, Nerison & Jukkala, Jamestown, for plaintiff and appellant.

Mackenzie & Jungroth, Jamestown, for defendant and respondent.

TEIGEN, Judge.

In this action the plaintiff seeks to recover damages for personal injury and damages to his automobile as a result of a collision with a school bus owned and operated by the defendant. It is alleged in the complaint that the collision was proximately caused by the negligence of the defendant. Defendant makes a general denial and admits the accident, but alleges it was caused solely by the carelessness and negligence of the plaintiff. Defendant counterclaimed for damages to his school bus. The trial of the action in the district court resulted in a verdict and judgment for the plaintiff. Thereafter, the defendant moved for a new trial under Rule 59(b) 6 of the North Dakota Rules of Civil Procedure on the grounds of insufficiency of the evidence to justify the verdict or that it is against law. No motion was made for judgment notwithstanding the verdict. A motion, however, was made for a dismissal which was denied. No appeal has been taken from this order.

The collision occurred between the station wagon driven by the plaintiff and the school bus driven by the defendant at the intersection of two section-line roads. It was an uncontrolled intersection. Plaintiff was traveling south on a north-south farm-to-market road which had been improved. The defendant was traveling east on a slightly improved road. These roads were located in a rural area. The plaintiff entered the intersection where the collision occurred from the north at a speed of from 50 to 55 miles per hour. This was within the statutory speed limit for the road. The defendant entered the intersection from the west after having slowed his school bus "nearly to a stop" and then continued into the intersection. The defendant testified

he looked to the north and to the south, saw no one approaching, and then proceeded to cross the intersection. The collision occurred at about 8:15 a.m. The defendant was picking up children from the farms in the area to transport them to school. The school bus was 28 feet in length, and the road which it was crossing was 22 feet in width. The bus had traveled about two-thirds of the way across the intersection when the collision occurred. The plaintiff had turned to his left in an attempt to avoid a collision. The left front of the defendant's school bus made contact with the right side of plaintiff's automobile. Both parties lived in the area and were familiar with the two intersecting roads. The roads were dry, the day was clear, and visibility was good. The sun was shining brightly from the east and it served to partially blind the defendant, who was traveling east. However, he testified the sun did not blind him when he looked to the north or to the south. The terrain was flat, except for a slight knoll located from 200 to 300 feet north of the intersection, but it did not obstruct the view of either driver.

The plaintiff testified he saw the school bus approaching the intersection before he reached the knoll; that he watched the bus and thought it was coming to a stop before entering the intersection; and that when he came to the top of the knoll, he concluded the school bus was coming to a stop and was yielding the right of way to him. He, therefore, kept going without slackening his speed and, when he saw the school bus enter the intersection, he attempted to apply his brakes but application of the brakes did not occur until he was within ten feet of the school bus. He also turned to the left in a futile attempt to avoid the collision. There were ten children in the defendant's school bus. The bus came to rest at or near the point of impact and neither the defendant nor the children were injured. However, some damage occurred to the bus. The plaintiff's vehicle came to a rest upside down in the east ditch of the farm-to-market road about 120 feet from the point of impact and was severely damaged. The plaintiff was injured; he was alone in his vehicle.

It is the theory of the plaintiff's case that, although defendant had the right of way because he was to the plaintiff's right, the defendant, by his actions, indicated an intention to yield the right of way when he slowed his school bus to nearly a stop as he approached the intersection, indicating to the plaintiff that he was stopping before entering the intersection to permit the plaintiff to pass; that where the plaintiff relied upon such implied permission and had undertaken to cross ahead of him on such reliance, the defendant should have permitted plaintiff to cross the intersection and should not have resumed his progress so as to involve danger of a collision; and that failure to do so was negligence.

The defendant denies that his actions indicated, or would have indicated to a reasonable and prudent person, that he intended to stop and yield the right of way; that, as a matter of fact, the defendant had the statutory right of way under the circumstances; that the plaintiff did not keep a proper lookout nor did he have proper control of his vehicle; and that such failure was negligence under the circumstances and was the proximate cause of the collision.

There was no conflict in the evidence, except on the question of lookout. The defendant testified that following the accident, the plaintiff crawled out of his car and said: "I didn't see you." Several other persons with whom the plaintiff had conversed following the accident testified in effect that the plaintiff had told them he had not seen the bus. The plaintiff claims his statements were misinterpreted and explains he meant by his language that he did not see the bus enter the intersection until it was too late to avoid the accident.

The trial court, in its memorandum opinion, accepted the plaintiff's version of the conflicting evidence as the facts. This was most favorable to the plaintiff's theory of

the case because, if the plaintiff had not seen the school bus until it was too late to avoid the accident, he had no basis, in fact, for an assumption that the defendant was yielding the right of way to him.

A motion for new trial was granted by the trial court and this appeal is from that order. In accordance with Rule 59(f), N. D.R.Civ.P., it filed its written memorandum with the order granting new trial. The last paragraph of the memorandum states:

"It is the opinion of this Court that the evidence in this case is insufficient to support and justify the verdict and that the same is against the law. * * *"

The trial court found the evidence was sufficient to establish the negligence of the defendant as a proximate cause of the accident. It also found the evidence sufficient to establish contributory negligence on the part of the plaintiff. It found that plaintiff saw the bus at least as far back as the knoll or raise, a distance of from 200 to 300 feet or more from the point of collision; that the plaintiff was put on notice of a possibly dangerous situation; that he should have slowed to a speed which would have allowed him to absolutely control his vehicle under any and all circumstances and that he was not justified in assuming that the bus was yielding the directional right of way. The trial court clearly states its position as follows:

"The whole trouble here was that plaintiff proceeded·on the assumption that the bus was going to stop, whereas, as it turned out, it did not. For the sake of argument, perhaps he did have a right to so assume, but together with such right he also had a duty to slow down and attain control of his vehicle so that he could do whatever necessarily had to be done should his assumption prove to be incorrect, as was the case here."

In other words, the court found the verdict returned was not in accordance with the evidence because it was against law.

Questions of negligence and of proximate cause are ordinarily questions for the jury. They become questions of law only when the state of the record is such that reasonable men can draw but one conclusion therefrom. Wolf v. Northern Tank Lines, Inc., N.D., 113 N.W.2d 675; Killmer v. Duchscherer, N.D., 72 N.W.2d 650; Lusty v. Ostlie, N.D., 71 N.W.2d 753; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Armstrong v. McDonald, 72 N.D. 28, 4 N.W.2d 191; Leonard v. North Dakota Co-op Wool Marketing Ass'n, 72 N.D. 310, 6 N.W.2d 576, and Fagerlund v. Jensen, 74 N.D. 766, 24 N.W.2d 816.

Therefore, if there is any reasonable explanation, consistent with the proof which will account for the happening of the accident without the necessity of imputing negligence to the plaintiff, the question is one for the jury. Wolf v. Northern Tank Lines, Inc., supra.

No hard and fast rule can be laid down to determine whether a motorist is guilty of contributory negligence in failing to stop or turn aside to avoid a collision with an object upon the highway. Each case must be decided upon its own particular facts and circumstances. Wolf v. Northern Tank Lines, Inc., supra; Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761, and Schaller v. Bjornstad, 77 N.D. 51, 40 N.W.2d 59.

Taking the evidence most favorable to the plaintiff, it would permit a conclusion that the defendant drove his school bus in such a manner, when he approached the intersection, that it would have appeared to a prudent motorist approaching from his left that he was going to stop before entering the intersection and would yield his directional right of way, which was not an absolute right of way; that he indicated by his acts an intention to so yield; that the plaintiff kept a proper lookout and saw the defendant approaching the intersection, continued to watch him and saw that he was slowing his vehicle and appeared to be coming to a stop before entering the intersection common to the two roads and that,

under the circumstances, any ordinarily prudent person would have concluded the same.

This is the theory on which the case was tried and argued to the jury and is a reasonable explanation consistent with the proof which accounts for the happening of the accident without the necessity of imputing negligence to the plaintiff.

"Where a driver has indicated an intention to yield, although he has the right of way, he should, when the other driver has undertaken to cross ahead in reliance on such implied permission, permit him to cross and not resume his own speed or progress so as to involve danger of a collision." 60 C.J.S. Motor Vehicles § 363, p. 885.

"Where the driver who is proceeding in the favored direction so acts as to indicate an intention to yield to the driver who is proceeding in the disfavored direction, the latter may properly proceed; * * *" 60 C.J.S. Motor Vehicles § 363, p. 897.

"Failure to yield right of way as negligence. Since the disfavored driver is not under all circumstances required to yield the right of way to the favored driver, the failure to yield the right of way is not necessarily negligence as matter of law, but is a fact to be considered along with the other facts in the case on the question of negligence. Nevertheless, the primary duty in avoiding a collision at an intersection rests on the disfavored driver; and where the two vehicles reach the intersection simultaneously, thus imposing on the driver who is proceeding in the disfavored direction a clear duty to yield the right of way, his failure to do so is regarded as negligence, and frequently as negligence per se or as a matter of law. However, the failure to yield the right of way may not be negligence as a matter of law if it is shown that the favored driver did wrongfully, negligently, or unlawfully operate his car so as to deceive a reasonably prudent driver and warrant him in going forward on the assumption that he had the right to proceed." 60 C.J.S. Motor Vehicles § 363, pp. 895–896.

The jury was fully instructed on the rules of the road, including the directional right-of-way rule. The jury was instructed that it was not an absolute right of way, that it was conditioned on a lawful and reasonable use of the highway and a proper regard for those who may approach from the left, and that the rule is imposed having regard to the convenience, as well as the safety, of all who use the highways.

The jury could well have concluded that the action of the defendant in "nearly stopping" his vehicle just before coming to the intersection in question would have deceived a reasonably prudent motorist approaching from the left, warranting him in going forward on the assumption that the favored motorist had yielded to him the right of way.

The trial court, in considering the motion for new trial, seems to have adopted the erroneous theory that the plaintiff was contributorily negligent as a matter of law. In Martin v. Parkins, 55 N.D. 339, 213 N.W. 574, a similar situation arose but the court, nevertheless, considered the order as one based on the insufficiency of the evidence because the order itself so stated. A similar situation exists here. The court in its memorandum indicates it granted new trial on the ground that the verdict is against the law; however, it also states in its memorandum and the order granting new trial that new trial was granted because of the insufficiency of the evidence to justify the verdict. We now examine the latter question.

■ We have held that a case once tried and concluded by a verdict should not be reopened and retried unless a careful examination of the record shows that justice so requires. Sullwold v. Hoger, N.D., 110 N.W.2d 457.

We have also said that although granting a new trial based on the insufficiency of the evidence involves the exercise of discretion on the part of the trial court, this discretion must not be abused and, where a verdict is supported by the great preponderance of the evidence, it is an abuse of discretion to grant new trial on the ground of insufficiency of the evidence. Hamre v. Senger, N.D., 79 N.W.2d 41. We have also held that an order granting a new trial on the ground of insufficiency of the evidence will not be reversed as readily as will an order denying a new trial. Mischel v. Vogel, N.D., 96 N.W.2d 233.

The trial court in its memorandum does not base its decision on the unsatisfactory state of the evidence or the weight of the evidence. It finds the evidence establishes the facts. They are most favorable to the plaintiff but the court concludes these facts do not justify the verdict as a matter of law. The granting of a new trial on the ground of insufficiency of the evidence involves the exercise of discretion on the part of the trial court. Therefore, where the trial court bases its decision to grant a new trial on the erroneous belief that the established evidence as a matter of law does not justify the verdict and the record discloses the preponderance of the evidence supports the jury's verdict, the decision of the trial court must be reversed. The court has not exercised a discretionary power.

The function of the trial court in determining whether the evidence is insufficient to justify the verdict differs from its function in determining whether a verdict is "against law" in that in the former case there is an element of discretion to weigh the evidence and determine its sufficiency to sustain the verdict, while in the latter case there is not. 66 C.J.S. New Trial § 68; Buck v. Buck, 122 Minn. 463, 142 N.W. 729, and Conti v. Walter Winters, Inc., 86 R.I. 456, 136 A.2d 622.

Where the evidence wholly fails to establish a material issue or, in the opinion of the court, establishes an affirmative defense, an order granting a new trial for that reason does not spring from the discretionary power of the court. The court in such case is dealing with a question of law. Buck v. Buck, supra, and Hull v. Minneapolis, St.P. & S.S.M.Ry. Co., 116 Minn. 349, 133 N.W. 852.

For the reason set forth, we find it was a jury question as to whether or not the plaintiff was contributorily negligent and that the preponderance of the evidence supports the jury's verdict that he was not. It was an abuse of discretion to grant new trial on the ground of insufficiency of the evidence.

The order granting new trial is reversed and judgment is ordered reinstated.

MORRIS, C. J., and BURKE and ERICKSTAD, JJ., concur.

STRUTZ, J., did not participate.