Helen WILLERT, Plaintiff and Appellant,

v.

Kenneth N. NIELSEN, Defendant
and Respondent.

No. 8320.

Supreme Court of North Dakota.

Oct. 13, 1966.

Rehearing Denied Nov. 18, 1966.

**28**

Ohnstad, Twichell, Maxwell & Ramage, West Fargo, for appellant.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for respondent.

ERICKSTAD, Judge.

We have before us an appeal by the plaintiff, Helen Willert, from a judgment of the District Court of Cass County which dismissed her cause of action and from an order of that court denying her motion for new trial.

Helen Willert is the mother of seven-year-old Cathleen Schumacher, who was struck and injured by an automobile driven by the defendant, Kenneth N. Nielsen, on February 28, 1964, as she crossed Tenth Street at the pedestrian crosswalk near Third Avenue North in Fargo. As a result of the injuries she suffered in the accident, Cathleen died on February 29, 1964. Mrs. Willert brought this action against Mr. Nielsen, alleging that her daughter's death was a result of his negligence; that she had incurred medical, hospital, funeral, and other expenses in the sum of $2,000, and that she had suffered pecuniary loss and injury as a result of the death of her daughter in the sum of $37,000.

In his answer Mr. Nielsen acknowledged that an accident had occurred and that Cathleen died from injuries suffered therein. He denied all the other allegations. He alleged that Cathleen ran out from between two automobiles into the path of his vehicle; that therefore the accident resulted from her failure to take due care and caution for her own safety; and that her own negligence proximately caused or contributed to the cause of the accident.

Mrs. Willert in her reply denied every material allegation of the answer and alleged that Cathleen was lawfully on the pedestrian crosswalk at the time she was struck and that Mr. Nielsen drove into her in violation of her right of way as a pedestrian while he was driving at a high and unlawful rate of speed.

The case was tried to a jury, and a verdict in favor of the defendant was returned.

Mrs. Willert concedes that a jury question was presented by the facts and that only issues of law are presented on this appeal.

She contends that it was prejudicial error for the court to give the following instructions:

* * * The rule is that whenever the *plaintiff's* acts show any want of ordinary care under the circumstances, even the slightest, contributing in any degree, even the smallest, as a proximate cause of the injury for which action is brought, plaintiff's right to recover is thereby destroyed.

The court instructs the jury that not every negligent act will support an action for damages. To constitute actionable damages there must exist three essential elements, namely:

1. A duty or obligation on the part of the defendant to protect the *plaintiff* from injury.

2. A failure on the part of the defendant to perform that duty.

3. An injury to the *plaintiff* resulting proximately, as hereinbefore defined, directly and without any intervening cause, from the failure of the defendant to perform that duty.

When these three elements are brought together they unitedly constitute actionable negligence. If the evidence by a fair preponderance thereof fails to establish any one of these elements, such failure is fatal to plaintiff's cause of action, and the jury must render a verdict for the defendant. [Emphasis supplied.]

The italicized words "plaintiff's" and "plaintiff" were erroneously used by the court for the words "decedent's" and "decedent."

It is Mrs. Willert's contention that the substitution of the word "plaintiff's" in the first paragraph injected into the case a matter that was outside the issues framed by the pleadings and to which there was no specific testimony; and that this instruction misled the jury into believing that some negligence of the parent, Helen Willert, may somehow have contributed to the injury of the child.

She states that by this instruction the jury was thrown wholly upon its own resources to find some remote or speculative fault on the part of the plaintiff mother and that the jury was thereby free to conceive and foist duties upon the plaintiff mother, the breach of which may in some remote way have contributed to the accident and thus have avoided the plaintiff's right to recover.

She asserts that this instruction on contributory negligence, even when given without the substitution of "plaintiff's" for "decedent's" is an instruction that has been disapproved by this court in the recent case of Spalding v. Loyland, 132 N.W.2d 914 (N.D.1964) because of the recognized tendency of the instruction to confuse and mislead the jury.

She further contends that the mistaken use of the word "plaintiff" for the word "decedent" in the balance of the instructions quoted made those instructions a misstatement of the presently existing law on actionable negligence and that such an instruction is fatal to the case.

■ On the other hand, Mr. Nielsen contends that an examination of the trial court's instructions as a whole clearly indicates that the contentions of Mrs. Willert are without merit. He states that the rule in North Dakota is that:

Instructions to a jury must be considered in their entirety. If the effect of the whole is to outline the issues in the case fairly and correctly, an isolated improper statement contained therein will not be considered prejudicial error. [Citing Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11.]

He refers the Court to Grenz v. Werre, 129 N.W.2d 681, at 690 (N.D.1964), in

which we said, quoting from earlier decisions:

"[t]hough an instruction standing alone may be insufficient or erroneous, it must be considered in connection with the remainder of the charge; and if the whole charge taken together correctly advises the jury as to the law, the error, if any, is thereby cured." Ferderer v. Northern P. Ry. Co., 77 N.D. 169, 42 N.W.2d 216; Froh v. Hein et al., 76 N.D. 701, 39 N.W.2d 11; Hoffer v. Burd et al., 78 N.D. 278, 49 N.W.2d 282.

Mr. Nielsen points out that initially the court correctly instructed the jury on the issues involved in the action and that shortly before the substitution of the words "plaintiff's" and "plaintiff" for "decedent's" and "decedent" the court properly instructed the jury that it was the negligence of the defendant and the contributory negligence of the deceased with which they were concerned. He points to other parts of the instructions which were correct and which, he contends, clearly dispelled any possible confusion which may have been caused by what he describes as a mere inadvertent transposition of two words on one page of the instructions.

■ He further refers the Court to another statement contained in *Grenz* as follows:

Where, as here, prejudicial error in an instruction is claimed, we consider the evidence before the jury, as well as the specific language used by the court, to determine whether the instruction complained of was in fact prejudicial to the defendants. * * *

Grenz v. Werre, supra, 129 N.W.2d at 690.

In analyzing the testimony pursuant to that rule he states that neither the plaintiff nor the defendant sought to elicit any testimony with regard to negligence on the part of Mrs. Willert and thus that the contention that the jury may have been misled by the instructions to speculate concerning some breached duty on the part of the plaintiff mother was without basis in fact.

As for the instructions said to have been disapproved by our court in *Spalding,* Mr. Nielsen asserts that the decision in that case was not handed down until after the trial court in the present case had instructed the jury, and that the instruction given in the instant case was the same instruction previously approved by this court in Clark v. Feldman, 57 N.D. 741, 224 N.W. 167. He further stresses that this court in *Spalding,* although it disapproved the use of such words as "though slight," etc., found that the instruction in *Spalding* was, under the facts and circumstances of that case, not erroneous. He contends further that an examination of the transcript will disclose that the contributory negligence of the decedent in the instant case was more than "slight."

Our view is that, although it may be apparent to attorneys and judges that the words "decedent's" and "decedent" or the name of the deceased child should have been used in the instructions in place of the words "plaintiff's" and "plaintiff" and that the trial court inadvertently used the latter words, we cannot assume that the jury, composed of lay people unacquainted with the rules of contributory negligence, proximate cause, and actionable negligence, discerned that these instructions did not mean what they said.

In Reuter v. Olson, 79 N.D. 834, 59 N.W.2d 830, it was contended that the use of the word "plaintiff" for "defendant" in the answer, which was read to the jury in the instructions, was prejudicial error. This court found that it was clear that the word "defendant" was intended where the word "plaintiff" was used and accordingly held the error not prejudicial.

However, we believe that there is a considerable difference between the misuse of the word "plaintiff" for the word "defendant" and the misuse of the word "plain-

tiff" for the word "decedent," as a third or other party is involved in the latter, making the error much more confusing.

■■■ When, in addition to the confusion caused by these erroneous substitutions of words we consider the fact that the jury was given an instruction which has been disapproved because of its recognized tendency to confuse and mislead a jury, we are convinced that justice would be best served by granting a new trial wherein proper instructions could be given.

■■■ In *Spalding* this court explained in detail its reasons for concluding that the giving of instructions on contributory negligence containing such words as "though slight" or similar phrases in referring to the degree which negligence of a party cooperates with or contributes to the negligence of another in causing the injuries complained of, is error and therefore disapproved. In so doing, this court quoted from a 1961 decision of the Supreme Court of Indiana, the crucial point being that a negligent act which contributes in the slightest (or as was said in the instant case, "contributing in any degree, even the smallest") to an injury is a remote cause and not a proximate or direct cause. Huey v. Milligan, 242 Ind. 93, 175 N.E.2d 698, at 702.

Having disapproved the instruction, it is now time to give meaningful effect to the disapproval. We therefore conclude that the giving of this instruction in the instant case was prejudicial error.

Mrs. Willert asserts additional reasons why a new trial should be granted. One is that the trial court erred in not giving the following requested instruction:

You are instructed that in a wrongful death case such as this, pecuniary loss need not be established by proof in dollars and cents. A substantial loss will be presumed.

The court's instructions pertinent to this issue read as follows:

If, under the evidence and these instructions, you should find that the plaintiff is entitled to a verdict, you will award her such sum as, under all the circumstances, may be just compensation for the pecuniary loss she has suffered by reason of the death of her child. Such damages could not exceed the amount asked for in the complaint, to-wit: * * or you may allow her any sum less than the amount demanded which you find from the evidence will be a just and fair compensation for the loss sustained. In determining the pecuniary losses suffered by the mother of the decedent, the plaintiff herein, you should also determine what pecuniary benefits she was reasonably certain to have received from the earnings and services of Cathleen Schumacher in the future during the period of their life expectancies.

No exact definition can be given of "pecuniary loss," as its meaning may vary with the circumstances of each case. Among such facts and circumstances which may be properly taken into consideration by you is the fact that under the laws of this State a duty is imposed upon the child of a person who is unable to maintain himself or herself to maintain the parent to the extent of his or her ability. The obligations of a child to its parent do not entirely terminate at majority. Even when no legal right or duty exists out of which the parent might derive benefits from the earnings of a child who has reached the age of majority, if a reasonable certainty exists that the child might have contributed more to the support of the parent than the parent would have contributed to the support of the child, and if it is reasonably certain that such margin of financial gain to the parent has been lost as a proximate result of the injury, such loss is a detriment for which the parent is entitled to compensation, if the defendant is liable for damages resulting from the accident in question. As an offset against the factors of loss men-

tioned, you should take into consideration what it would have cost the parent to support and educate the deceased child had she lived.

In weighing these matters, you may consider the age of the deceased and of her mother, the state of the health and physical condition of the deceased, and of her mother as it existed at the time of the death, and immediately prior thereto, their station in life, their respective expectancies of life, the disposition of the deceased, whether it was kindly, affectionate or otherwise, whether or not she showed a likelihood of contributing to the support of her parent, her mother, the earning capacity of the mother of the deceased, and all other facts and evidence that throw light upon this question of pecuniary loss.

In determining whether a verdict of $7,-800 was excessive in an action brought by the father for the wrongful death of his thirteen-year-old daughter, this court, in Henke v. Peyerl, 89 N.W.2d 1 (N.D.1958), quoted with approval from the case of Shields v. County of Buffalo, 161 Neb. 34, 71 N.W.2d 701, which contained a quotation from Dorsey v. Yost, 151 Neb. 66, 36 N.W. 2d 574, 14 A.L.R.2d 544.

■ *Dorsey* was an action by the administratrix of the estate of an eleven-year-old girl for damages for her wrongful death. The court therein said:

The measure of damages in an action such as we have before us is the pecuniary loss which the parent sustains by reason of being deprived of the child's services during his minority and the loss of contributions that might reasonably be expected to be made after reaching his majority. Contributions which are speculative or conjectural may not properly be included. It is for the jury to determine the pecuniary value of the child's services which would have accrued to the parent but for the accident. The amount to which a parent is entitled cannot be

accurately determined because of the numerous contingencies involved. The amount being very problematical, it is peculiarly for the jury to determine, after hearing all the evidence bearing upon the situation, including the parent's position in life, the physical and mental condition of the child, his surroundings and prospects, and any other matter that sheds light upon the subject. Members of juries generally have children of their own and have information as to the pecuniary value of children's services and the expense involved in their care and education. A jury is peculiarly fitted to determine the loss sustained by a parent in such a case. * * *

Dorsey v. Yost, supra, 36 N.W.2d at 575–576.

■ Reviewing the instructions in the instant case in light of the rules set forth in *Dorsey*, part of which were approved in *Henke*, it was not error for the trial court to refuse to give the requested instruction.

Mrs. Willert further contends that the court improperly and only partially instructed the jury as to the applicable rules of the road. She particularly complains that the court erred in giving the following instruction:

No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. [§ 39–10–28(2), N.D. C.C.]

Her view is that the instruction is in error, first, because it imposes an adult standard of conduct upon a seven-year-old child; second, because when taken with other instructions, it is contradictory, misleading, and confusing; and third, because it gives only part of a statute bearing upon the matter.

■ Point Three, we think, is well taken. Inasmuch as the court preceded that particular instruction with the words, "You

are instructed that the following is a statute of North Dakota regulating the rights and obligations of the drivers of motor vehicles and pedestrians," and inasmuch as he followed the instruction with the statement, "The Court instructs the jury that a violation of law is evidence of negligence which the jury may consider in determining the issue of negligence," the court should have included with § 39–10–28(2) another instruction based on § 39–10–30, which reads as follows:

39–10–30. Drivers to exercise due care.—Notwithstanding the foregoing provisions of this chapter every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

As for Point One, that it imposes an adult standard of conduct upon a seven-year-old child, we have examined the instructions in their entirety and find that the trial court adequately set forth the standard of care that a minor child is expected to exercise.

We trust that on a new trial instructions will be given based upon § 39–10–30, N.D. C.C.

The last contention made by Mrs. Willert is that the court abused its discretion in excusing the twelfth juror in the absence of a showing of bias or other good cause.

■ The occasion for excusing the twelfth juror came when this juror, following the testimony of Mrs. Willert, during which she gave her address, discovered for the first time that she was a neighbor. When he so informed the court, the judge ruled that he would order a new trial unless the parties would agree to proceed with eleven jurors.

We believe that this contention is without merit for the reason that Mrs. Willert's

attorney, after conferring with her, agreed that the trial should proceed with eleven jurors.

In that regard the transcript reads as follows:

MR. MAXWELL: Well, Mr. Bright has indicated that he is willing to proceed with eleven jurors, and in face of the alternative, we too agree to proceeding with eleven jurors.

THE COURT: I don't understand, you aren't giving the Court any idea that I twisted your arm to accept eleven?

MR. MAXWELL: The record may so show that you didn't.

Mr. Nielsen argues that even if Mrs. Willert should prevail on all the points raised in her brief, the judgment and the order denying the motion for a new trial should be upheld for the reason that no actionable negligence has been shown against Mr. Nielsen, and thus that the errors asserted by Mrs. Willert are without prejudice.

■ We cannot agree. Questions of negligence, contributory negligence, and proximate cause are questions of fact for the jury to determine unless the evidence is such that reasonable minds can draw but one conclusion. See: Lindenberg v. Folson, 138 N.W.2d 573 (N.D.1965); Vogel v. Bertsch, 130 N.W.2d 220 (N.D.1964); Sahli v. Fuehrer, 127 N.W.2d 900 (N.D.1964).

■ The evidence being in conflict, we do not find it to be such that reasonable minds could not differ thereon in the instant case.

For the reasons stated in this opinion, the judgment of the trial court is vacated and a new trial is granted.

MURRAY and KNUDSON, JJ., concur.

TEIGEN, Chief Justice.

I dissent. The majority grant a new trial to the plaintiff on the theory that the

plaintiff did not have a fair and impartial trial because of errors in the instructions which they say are prejudicial.

I cannot agree. I feel that the instructions taken as a whole outline the issues in the case fairly and correctly, and that the inadvertent mistake of the trial judge in substituting the word "plaintiff" for "decedent" in one part of the charge, when considered in connection with the rest of the charge and the theory on which the case was tried, is so evident that a jury of reasonable men would not be confused thereby. Furthermore, I cannot agree that we should "give meaningful effect" of our disapproval of the instruction in Spalding v. Loyland, N.D., 132 N.W.2d 914, to a case which was tried before our opinion in Spalding v. Loyland was released. It was not the intent of this Court to give retrospective effect to the decision in Spalding. This is evidenced by the fact this Court in that case merely disapproved of the instruction, but did not find it constituted prejudicial error as a ground for granting new trial. New trial, in that case, was granted on other grounds. The case in issue was tried before Spalding was released. I feel the trial court was entitled to rely on the law that existed under our decisions at the time the instant case was tried.

The majority also find it was error for the court not to have given another instruction based on Section 39–10–30, N.D.C.C., which is quoted in the majority opinion. I find the court did instruct as to the applicable elements of this statute as applied to the facts in this case. There was no request for an instruction based on this statute, and the omission, if any, certainly does not constitute misdirection. Plaintiff cannot now be heard to complain because she feels the instructions were not sufficiently specific unless the omissions in the instructions were such that they amounted to a misdirection. Reineke v. Commonwealth Ins. Co., 52 N.D. 324, 202 N.W. 657; DeMoss v. Great Northern Ry. Co., 67 N.D. 412, 272 N.W. 506; State v. Van Horne, 71 N.D. 455, 2 N.W.2d 1; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897; Lund v. Knoff, N.D., 85 N.W.2d 676, 67 A.L.R.2d 1110; Teegarden v. Dahl, N.D., 138 N.W. 2d 668.

However, a further examination of the instructions as a whole discloses the court did, in my opinion, fully instruct the jury. It read to the jury Subsection 1, of Section 39–10–28, N.D.C.C., which immediately precedes Subsection 2, quoted in the majority opinion. It provides:

1. When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger; * * *

It also instructed the jury as to the standard of care required of a seven-year-old child; admonished them that a motorist must exercise a higher degree of care toward children than adults; and instructed that a motorist has the duty, in areas where children may be expected, not to confine his lookout to the narrow lane immediately in front of his vehicle, but to watch the sides of the street as well. It also instructed the jury relative to the rules of the road, advising that a motorist must drive his vehicle in a careful, prudent manner, having due regard to the traffic, surface and width of the highway, and any other conditions then existing; that no motorist shall drive a vehicle in a manner to endanger the life, limb or property of any person. The court also informed the jury that it is the duty of the driver of a vehicle to be vigilant at all times, keeping a reasonable lookout for possible danger to himself or others, and that he must keep his vehicle under control so that not to injure another he can stop as quickly as might be required of him by eventualities that would be anticipated by

an ordinarily prudent person in a like position. It instructed that a motorist has a duty to obey the rules of the road, and that if he is careless or negligent, even though he did not violate any of the legal statutory requirements, he may nevertheless be held responsible for damages.

An examination of these instructions discloses to me that the court did instruct on all of the elements of Section 39–10–30, except the provision which states he "shall give warning by sounding the horn when necessary." There is no contention made in the arguments that this part of the statute applied to the facts in this case. The undisputed evidence establishes the accident occurred when the decedent-child ran from between two standing automobiles in the opposite lane of traffic to the one in which the defendant was driving. There was a continuous line of standing automobiles more than a block in length waiting for a traffic light to change. The decedent ran between two of them and into the path of the defendant's oncoming car. In other words, the standing automobiles were facing north, and the line was more than a block in length. It extended through the intersection a block south of the traffic light. The decedent, at the southerly crosswalk, ran between two of them and directly into the path of defendant's automobile proceeding south. The events immediately leading up to the collision occurred with such speed that there was no time to give warning by sounding the horn. Thus on the basis of the facts in the case, instruction on that portion of the statute was neither necessary nor proper.

A review of the instructions in this case discloses that the trial judge first advised the jury of the issues involved in the action as based on the pleadings and the evidence. In doing this he advised that the defendant by his answer alleged that "the accident resulted from the failure of the decedent * * * to take due care and caution for her own safety, and that her own negligence proximately caused or contributed to the cause of the accident and her resultant death." The court then summarized from the plaintiff's reply, which in part stated that " * * * she denied that her daughter * * * was negligent, * * *." The court instructed the jury that contributory negligence is an affirmative defense that must be proved by a fair preponderance of the evidence, and that if a fair preponderance thereof shows "that the decedent was guilty of contributory negligence which contributed directly and proximately, as the term 'proximate cause' shall be hereinafter defined, to the injury of which the plaintiff complains, the defense has sustained its burden of proof and plaintiff cannot recover." It instructed on the wrongful death statute, and informed the jury that the action may be brought by the surviving mother of the deceased. The court also instructed that to charge a child with contributory negligence, it must have had the capacity not only to know the danger ordinarily involved in the conduct alleged to be negligent, but to realize and appreciate the risk and to exercise judgment and discretion necessary to avoid it; that "the test of whether the child has been guilty of negligence contributing to injuries sustained by collision with a motor vehicle depends on whether it has used that degree or extent of care which ordinarily prudent children of its age, capacity, and experience are accustomed to use under like circumstance." I feel these instructions, in addition to the one singled out by the majority, in which the trial court inadvertently substituted the word "plaintiff" for "decedent," make the error of substitution so patent that reasonable men would not be confused as a result thereof.

Rule 51(a), N.D.R.Civ.P., provides that the court shall instruct the jury, after the arguments of counsel are concluded, only as to the law of the case. The purpose of an instruction is to furnish guidance to the jury in their deliberations and to aid them in arriving at a proper verdict so far as it is competent for the court to assist them. The chief object is to explain the law of the case, to point out the essentials to be

proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular parties involved.

I would affirm the judgment and the order denying a new trial.

STRUTZ, J., concurs.