[File No. 7180]

ERNEST ROKUSEK, Respondent, v. MIKE BERTSCH, Appellant.

(50 NW2d 657)

Opinion filed November 8, 1951

*Mackoff, Kellogg & Muggli,* for appellant.

422

*Jacobson & Child* and *Murray & Murray,* for respondent.

Burke, J. Plaintiff's son Millard Rokusek was killed while riding in an automobile driven by defendant's son, Albert Bertsch. Plaintiff brought this suit for damages, alleging that at the time of his son's death, Albert Bertsch was operating defendant's automobile for a family purpose with the consent of the defendant and that Millard Rokusek's death was proximately caused by the gross negligence and willful misconduct of Albert Bertsch. The defendant in his answer alleged that Millard Rokusek, at the time of his death was a guest in the automobile operated by his son, denied that his son had been guilty of any negligence and alleged that both plaintiff and plaintiff's son had been guilty of contributory negligence.

At the trial of the action, both at the close of plaintiff's testimony and after both sides had rested, defendant moved for a directed verdict. The motion was denied. The case was submitted to the jury and a verdict was returned in favor of the plaintiff. Thereafter defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. Before this motion was heard, defendant abandoned his motion for a new trial and elected to stand solely upon the motion for judgment non obstante. This motion was denied. Defendant has appealed from the order denying the motion and from the judgment entered in the case. Upon such an appeal only the ruling on the motion for judgment notwithstanding the verdict may be reviewed and the correctness of that ruling depends upon whether the moving party was entitled to a directed verdict at the time the motion for a directed verdict was made. Weber v. United Hardware and Implement Mutuals Co. 75 ND 581, 31 NW 2d 456; Olson v. Ottertail Power Co. 65 ND 46, 256 NW 246, 95 ALR 418; First Security Bank v. Bagley Elevator Co. 61 ND 140, 237 NW 648. In reviewing the trial court's ruling upon such

a motion, this court will take the view of the evidence most favorable to the party against whom the motion was directed. Haser v. Pape, 77 ND 36, 39 NW2d 578; Thompson v. Smith, 45 ND 479, 178 NW 430.

As a basis for his contention that his motion for a directed verdict should have been granted, the defendant asserts,

(1) that the evidence in the case affirmatively established that plaintiff's son was a guest of the defendant at the time he was injured and that there is no evidence of gross negligence or willful misconduct on the part of defendant's son, (2) that if the evidence be held sufficient to permit the jury to find that plaintiff's son was not a guest of the defendant, it is nevertheless insufficient to permit the jury to find ordinary negligence on the part of defendant's son.

The same contentions were made by defendant in his motion for a directed verdict upon the trial of the case. After denying the motion the trial judge submitted to the jury, as a question of fact, the question of whether plaintiff's son was a guest of the defendant. He instructed them that, if they found plaintiff's son was a guest, they must also find gross negligence or willful misconduct on the part of the defendant's son in order to charge the defendant with liability. He also instructed them that, if they found plaintiff's son was not a guest, ordinary negligence on the part of defendant's son would be sufficient to impose liability.

The jury returned a general verdict against the defendant. Upon which theory they assessed liability it is impossible to say. Because of the nature of this appeal, however, the judgment of the district court must be affirmed if the evidence is sufficient to sustain the jury's verdict upon either theory. If, therefore, the evidence will warrant a finding of gross negligence or willful misconduct, our consideration of the case need go no farther.

The "guest statute", NDRC 39–1503 provides that the "owner, driver or person responsible for the operation of a vehicle" shall be liable to a guest only where "injury to, or death of a guest, proximately results from the intoxication, willful misconduct or gross negligence of such owner, driver, or person responsible for the operation of such vehicle."

" 'Gross negligence' is, to all intents and purposes no care at all. It is the omission of the care which even the most inattentive or thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically willful in its nature." Rubbelke v. Jacobsen, 66 ND 720, 722, 268 NW 675; Erickson v. Foley, 65 ND 737, 262 NW 177. Willful misconduct denotes intentionally doing that which should not be done or failing to do that which should be done, with knowledge, express or implied, that injury to a guest will probably result or with wanton and reckless disregard of the possibility that injury to a guest may result. Anderson v. Newkirck, 225 P2d 247, 101 Cal App2d 171; Cope v. Davidson, 180 P2d 873, 30 Cal2d 193, 171 ALR 667. Questions of negligence are questions of fact unless the evidence is such that only one conclusion can be deduced therefrom. McCullagh v. Fortune, 76 ND 669, 38 NW2d 771; Olson v. Kem Temple, 78 ND 263, 49 NW2d 99.

The question to be decided then is, was the evidence such that the jury could not have reasonably reached the conclusion that defendant's son was guilty of gross negligence or willful misconduct?

Plaintiff and defendant and their respective families were members of a rural church located in Hettinger County. In the summer of 1948, daily classes were to be held at the church for the purpose of preparing the young people for confirmation. Both plaintiff and defendant had children who were to attend the classes and arrangements were made, whereby plaintiff's son was to be transported to and from the church school by the defendant. In accordance with such arrangements defendant did furnish the transportation. Sometimes the vehicle furnished was a truck and sometimes it was a passenger car. Sometimes the vehicle was driven by Albert Bertsch and sometimes by his elder brother.

At the close of the school session on the day of the accident, there were two automobiles present to take the children home from school. One of these cars, the one in which plaintiff's son rode, was driven by Albert Bertsch, son of the defendant. The other was driven by Clayton Fuchs. The Bertsch boy was

fifteen years old and Fuchs was fourteen. The car driven by Bertsch left the church first. Both cars were going in the same direction and about a half mile north of the church the Fuchs car passed the one driven by Bertsch. For some distance, the extent of which is uncertain, the Bertsch car remained behind. Then as the two cars were going up a hill the Bertsch car speeded up and passed the Fuchs car at the crest of the hill. As it started down hill it began to swerve from one side of the road to the other. Finally it left the highway completely out of control. It rolled over at least once and eventually came to rest upside down in a field adjacent to the highway. Fuchs testified that when the Bertsch car passed him it was going forty or fifty miles an hour, that as it passed, it turned sharply to the right in front of him, forcing him to turn to the right and apply his brakes in order to avoid a collision. Fuchs lost control of his car and it finally turned over on its side but did not leave the highway. Fuchs also admitted that there had been racing between the cars going to and from the school on previous occasions. One of the passengers in the Bertsch car testified that its speed was, in his judgment, seventy miles an hour. There is also testimony that Bertsch's sister who was a passenger in the car warned him that he was not supposed to go so fast and that Bertsch replied that he was the driver. Another of the passengers in the Bertsch car testified that as it proceeded down the hill skidding from side to side all the kids hollered because they were scared, and that Bertsch kept turning the steering wheel from side to side. The witness also stated that he thought Bertsch was trying to gain control of the car and that he did not believe the swerving was intentional. According to the testimony of the sheriff of Hettinger County, it was about four hundred feet from the crest of the hill where Bertsch passed Fuchs to the point where the Bertsch car left the highway and five hundred and four feet from the point where it left the highway to the point where it finally came to rest.

The circumstances of this case are not unlike those in the case of Rawlins v. Lory, 111 P2d 973, 44 Cal App2d 20. In that case the court stated, (p 974) "Plaintiff and defendant Martin W. Lory were school companions of the ages of 14 and 15 years

respectively. Plaintiff was riding as a guest of said defendant at the time the accident occurred. Another school companion, who was driving another automobile, passed said defendant on Racine street in the City of Oakland shortly before the accident occurred. Said defendant followed the other car at a high rate of speed, turned sharply to the left into North Street and ran into the far curb on North Street and overturned." Referring to these facts it was said (p 975) "It is also a legitimate inference from the testimony that the defendant driver was racing to overtake the other car and that he was engaging in what may be termed skylarking in 'hanging the corner' into North Street. . . . It is a matter of common knowledge that such skylarking at high rates of speed is engaged in at times by drivers, particularly youthful drivers, merely for the sake of the thrill which it produces and with reckless indifference to the consequences. . . . Whenever the testimony shows, directly or by legitimate inference, that a driver was engaging in such conduct, such evidence is sufficient to show willful misconduct."

In this case the fact that defendant's car traveled approximately 400 ft. from the point where it topped the crest of the hill and started to swerve from side to side, to the place where it left the highway, and still had enough speed to travel 500 feet more before it came to rest, would permit a legitimate inference that the car was being driven at an excessive speed. The facts that the Fuchs car first passed the Bertsch car and then the Bertsch car passed the Fuchs car and that Fuchs admitted prior racing would, in view of all the other circumstances, permit an inference that the cars were racing. The fact that the Bertsch car cut in so sharply in front of the Fuchs car that Fuchs had to apply his brakes and turn to the right to avoid a collision would permit a conclusion that Bertsch was indulging in reckless and dangerous antics.

We are of the opinion therefore that the evidence is sufficient to sustain a finding by the jury of gross negligence or willful misconduct.

The judgment of the district court is accordingly affirmed.

MORRIS, C. J., and CHRISTIANSON and GRIMSON, JJ., concur.

SATHRE, J. did not participate.