Eymard WISNEWSKI, Plaintiff and Appellant,

v.

Romelle OSTER, William Oster, and Daniel Gully, Defendants and Respondents.

No. 7871.

Supreme Court of North Dakota.

June 20, 1961.

Lanier, Lanier & Knox, Fargo, for plaintiff and appellant.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendants and respondents.

BURKE, Judge.

This is an appeal from a judgment entered notwithstanding the verdict in the above entitled action. The action is one for damages alleged to have resulted from the collision of a car driven by the plaintiff and one driven by the defendant, Gully. Upon the trial of the case the verdict was for the plaintiff and against the defendant, Gully. Judgment, notwithstanding this verdict, in favor of the defendant, has been entered. From this judgment plaintiff has appealed. The only question in the case is whether the evidence establishes contributory negligence on the part of the plaintiff as a matter of law.

Three motor vehicles were involved in the situation which produced the accident. A car owned by Romelle Oster and operated by William Oster had been disabled by a puncture of the tire on its left front wheel while proceeding eastward upon Highway No. 11 towards Lidgerwood at about midnight. Oster immediately drove the car to the extreme right-hand side of the road and stopped. In the position, where it stopped most of the car was over the shoulder of the highway but its left-hand wheels did extend about 9 inches onto the paved surface of the highway. At about the same time the defendant, Gully, who had spent the evening in Lidgerwood was driving westward upon Highway No. 11 on the way to his farm home. Just before he reached the regular turn to his farm, he noticed the Oster car parked at the side of the road with its lights on "parking." Thinking the people in the car might need help, he drove to the place where the Oster car was parked and stopped on the north side of the road immediately east of the front of the Oster car. After some conversation with the people in the Oster car, whom he knew, it was decided that defendant would back his car to the south side of the road, directly in front of, and facing the Oster car, to furnish light for changing the tire. In the meantime the plaintiff who had spent the evening in Genesco, started to drive back to Lidgerwood accompanied by his brother Harvey and Layne Johnson. He reached the scene of the accident just at the time the defendant, Gully, in the course of backing his car to the intended position in front of the Oster car, had reached a point where his car was diagonally across the south or east bound lane of the highway and headed in a northwesterly direction. Plaintiff grazed the Oster car in passing and ran head-on into the left front end of defendant's car.

Defendant testified that before commencing to back up he looked to the west and saw no car approaching. He testified that at the time and place the atmosphere was clear and the visibility was good and that he backed up at a speed of about five miles per hour.

To the west from the scene of the accident the highway slopes gently upward to a crest about six hundred yards distant. However the slope is such that a driver of a car approaching from the west would have had a clear view of the Oster car for at least a distance of four-tenths of a mile before reaching it.

Plaintiff testified that he approached the scene at a speed of forty-five to fifty miles an hour; that he drove at this speed because there was intermittent fog which was particularly heavy in the low spots; that as he came to the crest of the rise west of the scene of the accident there was fog in the valley ahead; that at the top of the hill he saw the headlights of a car approaching from the east and, assuming he was going to meet a car, he made sure he was in his proper lane of traffic. However, as the

headlights of this car appeared to turn to the north, he assumed that it had turned off the highway and paid no further attention to it. Plaintiff described the actual collision as follows: "It wasn't but about a second or so later I saw this other car parked partially on the highway. I went around that, and here in front of me was the Gully car crossways on the road, and in my lane of traffic. I hit the brake, and after that I woke up and was on the highway."

The headlights of the Gully car were on at all times prior to the collision. The parking lights of the Oster car were on. There is some uncertainty as to whether the right tail-light of the Oster car was lit as there was some testimony as to a loose connection which caused the light to turn off at times. It was also suggested that the people who removed the spare tire from the storage compartment of the car obscured the view of the left tail-light to the west. There is an apparent conflict in the testimony as to the state of the atmosphere. The defendant stated the visibility was good and the plaintiff said it was foggy.

According to plaintiff, after he had seen the lights of an approaching car turn to the right, from the crest of the hill and had assumed that the car had turned off the highway, he proceeded downgrade, in his own lane of traffic into a fog bank. He did not remember whether his headlights were on high-beam or low-beam. In the fog he could not see more than twenty feet ahead. He had been travelling at a speed of forty-five to fifty miles an hour and did not reduce his speed when he entered the fog. He did not see the Oster car until he was within approximately five feet of it and he saw the Gully car immediately thereafter.

The testimony of disinterested witnesses as to the physical facts, discloses some minor discrepancies in the testimony of the plaintiff. Plaintiff's car left skid marks on the pavement. The skid mark of his right wheels was forty-eight and six tenths feet

long and that of his left wheels was forty-six and three tenths feet long. These marks started at a point approximately 12 feet to the west of the Oster car and proceeded in a direction slightly south of east to the point of impact with the Gully car. It follows that plaintiff must have seen the Oster car from at least a distance of twelve feet plus the distance he would have travelled during reaction delay, and not from a distance of five feet as he testified. It also follows that his testimony, "I went around that," referring to the Oster car does not mean that he turned to avoid the Oster car. As he proceeded eastward he got closer to the Oster car grazed its left front fender in passing. After being struck, the Gully car spun clockwise about one hundred-thirty degrees and came to rest in the south ditch headed east with its left rear wheel fifty-nine and six tenths feet slightly southeast of the point of impact. Plaintiff's car passed to the north of the Gully car, turned southeast and came to rest in the south ditch with its left rear wheel about one hundred feet from the point of impact. The point of impact was twenty-one and six tenths feet east of the Oster car and the body of a young man who had been on the highway and was struck and killed, at sometime during the melee, was found one hundred-eighty feet east of the point of impact. When and where he was struck is not shown by the evidence.

At the close of the testimony in the case of defendant, Gully, moved for a directed verdict upon the following grounds:

"First, the physical facts of the accident, the marks on the highway, the damage to the vehicles involved indicate tremendous speed on the part of the plaintiff.

"Second, it appears conclusively, I think, that the plaintiff, by his own testimony, was not keeping a proper lookout. He admitted travelling in this area at a speed of 45 to 50 miles an hour, possibly faster, at a time when

he could see no more than 20 feet ahead of him. It appears conclusively too that plaintiff was not keeping a proper lookout, that he did not have his car under the control required by law. I think, without any doubt, taking his testimony and the witnesses' testimony at their face value, and excluding completely the evidence offered by defendants' witnesses, the negligence of Mr. Wisnewski has been established; and if I have not already mentioned, he certainly was travelling too fast for the conditions then prevailing * * *."

 Whether the trial court erred in ordering judgment notwithstanding the verdict depends upon whether the moving party was entitled to a directed verdict at the time the motion for a directed verdict was made. Rokusek v. Bertsch, 78 N.D. 420, 50 N.W.2d 657; Weber v. United Hardware & Implement Mutuals Co., 75 N.D. 581, 31 N.W.2d 456. In reviewing the trial court's ruling upon such a motion this court will take the view of the evidence most favorable to the verdict. Serbousek v. Stockman Motors, N.D., 106 N.W.2d 879; Quam v. Wengert, N.D., 86 N.W.2d 741. Questions of negligence and contributory negligence are ordinarily questions of fact for the jury. It is only where the evidence is such that reasonable men can draw but one conclusion therefrom that they become questions of law for the court. Serbousek v. Stockman Motors, supra; Rokusek v. Bertsch, supra; Schaller v. Bjornstad, 77 N.D. 51, 40 N.W.2d 59.

In his motion for a directed verdict the defendant asserted that the evidence of the plaintiff, himself, establishes conclusively that plaintiff was negligent in not keeping a proper lookout, in not having his car under control and in travelling too fast for prevailing conditions. Section 39–09–01, NDCC provides:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway at a speed to endanger the life, limb, or property of any person."

Section 39–09–02, NDCC provides that it shall be presumably lawful to drive at a speed of 55 miles an hour upon a rural highway, "unless otherwise, permitted, restricted, or required by conditions."

In Schaller v. Bjornstad, 77 N.D. 51, 40 N.W.2d 59, 66 we said:

"One of the conditions of the right to drive at the maximum statutory speed is freedom from obstruction of the view ahead."

Upon the same page we also stated:

"Where the vision of the driver * * * is obstructed for any cause ordinary care requires him to proceed with more caution than where he has unobstructed vision. * * * The driver of an automobile whose vision is obscured by atmospheric conditions such as fog, or rain, must exercise care commensurate with the situation."

Section 39–11–03, NDCC provides that the headlights on motor vehicles upon high-beam shall be powerful enough to reveal persons and vehicles at a distance of 350 feet ahead and upon low-beam at a distance of 100 feet ahead.

This court has had occasion, in several cases to consider the duties and liabilities of persons involved in collisions with slowly moving or standing vehicles upon rural highways. In most of these cases we have held that a plaintiff who overtook and collided with a slowly moving or standing vehicle in plaintiff's lane of traffic was guilty of contributory negligence as a matter of law. Billingsley v. McCormick Transfer Co., 58 N.D. 913, 228 N.W. 424; Bagan v. Bitterman, 65 N.D. 423, 259 N.W. 266; Schaller v. Bjornstad, 77 N.D. 51, 50

N.W.2d 59; Doll v. Treiber, N.D., 76 N. W.2d 910; Cose v. Towner County, N.D., 102 N.W.2d 538. In other cases, where there were distracting circumstances or sudden emergencies we have held that the question of contributory negligence was for the jury. Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761; Spenningsby v. Peterson, N.D., 67 N.W.2d 913. In Serbousek v. Stockman Motors, Inc., N.D., 106 N.W. 2d 879, we held that where plaintiff's decedent collided with a truck which backed into his lane of travel as he approached, the question of contributory negligence was for the jury.

▆▆▆▆ The facts of the instant case more closely resemble those of the Serbousek case than any of the others. In both of these cases the primary cause of the collision was the fact that a vehicle backed directly into the path of another vehicle which was travelling in its proper lane of traffic at a place where a relatively high speed was compatible with due care. This case, however, differs from the Serbousek case, because in the Serbousek case plaintiff's decedent was aided by a presumption that he was acting with due care. No such presumption aids the plaintiff here. Here plaintiff testified that his vision ahead was obscured by fog to the extent that he could not see more than twenty feet ahead and that despite the fog he maintained a speed of forty-five to fifty miles an hour. While we have no statutory rule of safety in this state, the decisions of this court (cited above) lay down the rule that a driver of a motor vehicle must drive at a speed which will enable him to stop within the assured clear distance ahead. This rule is subject to the qualification that if there are distractions such as bright lights from congested approaching traffic (Lostegaard v. Bauer, supra) or a sudden and unexpected obstruction to vision (Spenningsby v. Peterson) the question of whether a driver may be excused from seeing an obstacle in his path is one for the jury. In this case it is clear from plaintiff's own testimony that he was negligent. As plaintiff ap-

proached there was considerable activity at the scene of the collision. One car was parked at the side of the road with its parking lights lit. Another car was backing diagonally across the road with its driving lights on. At least three people were moving about either on the highway or on the shoulder of the highway making preparations to change a tire. If plaintiff's lights conformed to the statutory requirements and the night had been clear this activity would have been clearly within his view from a distance of three hundred-fifty feet. According to his own statement plaintiff did not see any of this activity until he was within five feet of the parked car. His estimate of this distance is inaccurate as he testified that he did not put on his brakes until he saw the parked car and his skid marks began at a point twelve feet west of the parked car. Allowing for reaction time, he must have seen the parked car at a distance of at least twenty-five to thirty-five feet. This variance and the variance between the testimony of the plaintiff and defendant, Gully, as to whether the night was clear or foggy are immaterial. If the night was clear and plaintiff's lights were in good condition and operating, as he said they were, it is clear that he was not keeping a proper lookout. If the night was so foggy that plaintiff, keeping a proper lookout, could not see any of the activity at the scene of the collision until he was within thirty or thirty-five feet of it, it is clear that his speed of forty-five to fifty miles an hour was excessive in the circumstances. We think too that plaintiff's negligence must be said to have contributed proximately to cause the collision for by his negligence, he deprived himself of any opportunity to avoid the collision either by stopping or by slowing down and passing to the north of the Gully car.

The judgment notwithstanding the verdict entered in this case is therefore affirmed.

SATHRE, C. J., and TEIGEN, STRUTZ and MORRIS, JJ., concur.