Clement SIMON, Plaintiff and Appellant,

v.

Ralph WOODLAND, Defendant and Respondent.

Civ. No. 8575.

Supreme Court of North Dakota.

Aug. 26, 1970.

Rehearing Denied Sept. 23, 1970.

land, to recover for property damages to Simon's 1961 Chevrolet automobile and for personal injuries he sustained in a collision between his car and a haystack mover being towed by a tractor driven by Woodland. The collision occurred on a farm-to-market road approximately 14 miles south of Menoken, North Dakota. Woodland denied liability and, in addition, alleged contributory negligence as a defense. The case was tried to the district court without a jury. Judgment was entered dismissing the complaint on the ground of Simon's contributory negligence which constituted one of the proximate causes of the accident and the consequent injury to Simon and damages to his automobile. Simon has appealed from the judgment of dismissal and demands a trial de novo.

On September 15, 1964, Woodland and his wife were loading bales of hay on a haystack mover in a hay field located a few miles north and west of their farm. They completed loading the haystack mover near sunset and then started for home. Mrs. Woodland drove their red and white Jeep and her husband followed the Jeep, driving his tractor which was towing the loaded haystack mover. They both proceeded east to the Glencoe Church where they then turned south onto the north-south gravel road leading toward their farm. Mrs. Woodland operated the Jeep about 35 rods ahead of the tractor-haystack mover unit. It was dark when they passed the Glencoe Church and the headlights of both the Jeep and the tractor were lit at the time.

On the same evening, Clement Simon, who lives several miles south of the Glencoe Church, finished his farm chores for the day and prepared to attend a meeting of interest to area farmers being held at eight o'clock that evening at the Kist Livestock Auction ring, located between Bismarck and Mandan. Simon, together with his wife and two small children, occupied the front seat of his car; and his father and mother rode in the back seat of the car. The Simons left their farm and

Wolf, Glaser & Milhollan, Bismarck, for plaintiff and appellant.

Floyd B. Sperry, Bismarck, and Hjellum, Weiss, Nerison & Jukkala, Jamestown, for defendant and respondent.

PAULSON, Judge.

The plaintiff, Clement Simon, brought an action against the defendant, Ralph Wood-

proceeded north on the gravel-surfaced road which passes the Glencoe Church. As Simon was driving north, he observed two vehicles approaching from the opposite direction, both of which had their lights burning, and he noted that one was a car or pickup and that the other was a tractor. As the Simon vehicle and the Jeep driven by Mrs. Woodland approached each other, Mrs. Woodland alternated the lights on the Jeep several times from bright to dim, and Simon dimmed the lights on his car. Simon approached and passed the oncoming Jeep, and approached and passed the oncoming tractor, and the accident then occurred. The left front fender of the Simon car collided with the left front corner of the haystack mover being towed behind the tractor operated by Woodland.

In his complaint Simon alleges that Ralph Woodland was operating a farm tractor pulling a haystack mover on a public road in a careless and negligent manner in that the haystack mover was of excessive width, in violation of § 39–12–04 of the North Dakota Century Code; that the haystack mover was not equipped with proper lights as required by § 39–21–15, N.D.C.C.; that while Woodland was driving his tractor and towing a haystack mover on a public highway, without the exercise on his part of proper lookout and control, Woodland's haystack mover occupied both halves of the highway; and that such negligence was the proximate cause of the collision between Simon's automobile and Woodland's haystack mover.

The North Dakota Legislature has enacted certain laws governing the operation of all vehicles on the highways of this State. The general rule is that a violation of these statutes is evidence of negligence. Muhlhauser v. Archie Campbell Construction Co., 160 N.W.2d 524 (N.D.1968); Glatt v. Feist, 156 N.W.2d 819 (N.D.1968); Gravseth v. Farmers Union Oil Company of Minot, 108 N.W.2d 785 (N.D.1961); Erdahl v. Hegg, 98 N.W.2d

217 (N.D.1959). This court has also held that a violation of the law governing highway traffic, even though such violation is evidence of negligence, is not sufficient to determine liability unless such violation is the proximate cause of the accident. Hillius v. Wagner, 152 N.W.2d 468 (N.D. 1967). The following statutes are pertinent in determining Simon's claim that Woodland was negligent:

§ 39–12–04, N.D.C.C. "Vehicles operated on a highway in this state shall not exceed the following width * * * limitations:

"1. A total outside width, including load thereon, of eight feet. * * * nor shall such limitation apply to farmers or ranchers or employees under their supervision when moving hay in the stack for his or their own use or in cooperation ·with other owners, providing that equipment used for this purpose shall be operated along the extreme right edge of the road or highway, and shall be operated only between the hours of sunrise and sunset and in accordance with reasonable rules and regulations prescribed by the state highway commissioner * * *."

§ 39–21–01, N.D.C.C. "Every vehicle upon a highway within this state at any time from a half-hour after sunset to a half-hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of five hundred feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles."

§ 39–21–15, N.D.C.C. "Every * * * towed implement of husbandry, when operated upon the highways of this state

during the times mentioned in section 39–21–01, shall be equipped as follows:

* * * * * *

"2. Every towed unit of farm equipment or implement of husbandry shall be equipped * * *. In addition, if the extreme left projection of such towed unit of farm equipment or implement of husbandry extends beyond the extreme left projection of the towing tractor or vehicle, such unit or implement shall be equipped with at least one amber lamp or reflector mounted to indicate as nearly as practicable the extreme left projection and visible from all distances within six hundred feet to one hundred feet to the front thereof when illuminated by the upper beams of head lamps * * *.

"The lamps and reflectors required by this section shall be so positioned as to show from [the] front * * * as nearly as practicable the extreme projection of the vehicle carrying them on the side of the roadway used in passing such vehicle. * * *"

§ 39–10–08, N.D.C.C. "1. Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway * * *."

§ 39–10–09, N.D.C.C. "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one line of traffic in each direction each driver shall give to the other at least one-half of the main-traveled portion of the roadway as nearly as possible."

The facts with reference to Woodland's negligence are not in serious dispute. Section 39–12–04, N.D.C.C., provides that any vehicle operating on a highway in this State must not exceed 8 feet in width, subject to certain exceptions in the statute. There is no dispute that the loaded haystack mover was at least 17 feet wide and was being towed on a highway. Section 39–12–04 provides for an exception whereby a farmer can move hay in the stack for his own use, stating that the equipment used for this purpose shall be operated along the extreme right edge of the road or highway, and shall be operated only between the hours of sunrise and sunset. Although there is conflicting testimony as to the time when the accident happened, Woodland testified that his tractor lights were burning; and Mr. and Mrs. John L. Bower, who live a short distance north of where the accident occurred, testified that the accident took place at approximately 8:00 p. m. It was stipulated into the record that the sun set at 6:55 p. m. on September 15, 1964, the date of the accident. Woodland was violating § 39–12–04, N.D.C.C., where, at the time of the accident, he was not towing his haystack mover between sunrise and sunset and the haystack mover exceeded the statutory width limitation.

Section 39–21–15, N.D.C.C., provides that every towed unit of farm equipment or implement of husbandry must have lamps or reflectors so positioned as to show from the front as nearly as practicable the extreme projection of such equipment on the side of the roadway used in passing such vehicle. In the instant case, the lamp or reflector, to comply with the statute, should have been placed at the left front edge of the haystack mover. However, photographs introduced into evidence conclusively show that the haystack mover did not have any lamps or reflectors positioned at its left front edge, and Woodland's testimony confirmed that there were neither lamps nor reflectors mounted at the left front edge of his haystack mover. Section 39–21–01, N.D.C.C., requires that lighted lamps or illuminating devices as required by the statute shall be displayed from a half-hour after sunset to a half-hour before sunrise. Since it was obvious that the sun set at 6:55 p. m. on September 15, 1964, and the accident occurred about 8:00 p. m. on that date, we find that Ralph Woodland did not comply with §§ 39–21–01

and 39-21-15, N.D.C.C., and that such noncompliance was evidence of negligence.

Simon contends that Woodland, in driving his tractor and hauling his haystack mover, violated §§ 39-10-08 and 39-10-09, N.D.C.C. Both of these sections set forth and establish rules of the road by which the flow of traffic on North Dakota highways is regulated and controlled. Section 39-10-08 specifically pertains to vehicles proceeding in the same direction and to the rules to be observed when one vehicle is passing another vehicle, both traveling in the same direction. Operating a vehicle upon the right half of the roadway is also a directive under this section. Section 39-10-09 sets forth the general rules which are applicable to vehicles approaching each other from opposite directions on the same highway.

There are a number of decisions concerning liability where one of the vehicles involved in a collision crosses the marked center line on a highway. In the case at bar there is no marked center line on the highway, which is gravel-surfaced, containing four distinct tracks, two of them for vehicles proceeding in one direction and two of them for vehicles traveling in the opposite direction. Simon claims that the haystack mover extended over the center line of the traveled portion of the gravel-surfaced road, which is 24 feet in width.

■ The highway patrolman took measurements which established the positions after the accident of the tractor and the haystack mover. Only one measurement taken by the highway patrolman evidences the position of the tractor prior to the accident. The patrolman stated that he found a distinct rib mark made by the right rear tire of the tractor. This rib mark was 2 feet east of the extreme west edge of the graveled portion of the road. Woodland stated that the total width of his tractor from the outside of the right rear tire to the outside of the left rear tire was 6.3 feet, and that the haystack mover projected laterally 5.35 feet beyond the left rear tire of his tractor. Woodland also testified that prior to the accident he was driving south on the gravel road in a straight line, parallel to the road, and that the haystack mover, equipped with a centered hitch, was being towed directly behind the tractor. When the cumulative measurements of the 2 feet, plus the 6.3 feet, plus the 5.35 feet are added together, the haystack mover extended east a distance of 13.65 feet from the west edge of the graveled portion of the roadway. In using this calculation, Simon asserts that Woodland was driving his tractor and towing his haystack mover, which projected over the geographical center line of the graveled portion of the roadway by 1.65 feet, and that Woodland's operation, therefore, was in violation of § 39-10-09, N.D.C.C. We believe that Simon's conclusion as to the position of the haystack mover in relation to the geographical center line of the graveled portion of the roadway is correct. A further analysis of the testimony shows that the skid mark caused by Woodland's right rear tractor wheel was 2 feet east of the west edge of the traveled portion of the road, and, together with the width of the tractor and the projection of the haystack mover beyond the widest part of the tractor, that Woodland was at least 1.65 feet, or 19.8 inches, over the center line of the traveled portion of the road. The testimony further reveals that the haystack mover was more than 17 feet in width and was being towed after sunset without lamps or reflectors positioned on the haystack mover to reflect the total projection of such equipment to a motorist meeting such farm machinery. In fact Woodland does not dispute or attempt to refute the testimony concerning the rib mark made by his right rear tractor tire, and, in fact, corroborates such testimony by stating that his haystack mover was 17 feet in width, his tractor was 6 feet 3 inches in width, and the projection of his haystack mover was an additional 5.35 feet beyond the left rear tire of his tractor. Woodland reaffirms Simon's testimony that there were four

distinct tracks which distinguished the flow of traffic traveling in opposite directions, and that the center line of the traveled portion of the graveled roadway was not marked as is the center line on an asphalt or paved roadway. We find that Woodland was negligent in operating a tractor pulling a haystack mover of excessive width on a highway after sunset, because the haystack mover projected laterally an additional 5.35 feet beyond the left rear tire of his tractor, and, accordingly, projected nearly 20 inches over the center of the traveled portion of the roadway; and because the haystack mover was not equipped with any lamps or reflectors as required by law, and such violation of the statutory rules as to the equipment and operation of a vehicle upon a highway constituted the proximate cause of the accident in view of the fact that there were four distinct tracks, two for vehicles proceeding in one direction and two for vehicles being driven in the opposite direction, which would lead drivers to believe that ordinary-sized vehicles could meet and pass each other without difficulty where the vehicles stayed in the tracks on their respective sides of the roadway.

■ The next issues we must face are whether Simon was negligent and whether his negligence was a proximate cause of the accident. The above issues will be considered by keeping in mind that the burden of proof is upon Woodland to establish that Simon was negligent and that Simon's negligence was a proximate cause of the collision.

Woodland asserts in his answer that the plaintiff, Clement Simon, was operating his 1961 Chevrolet automobile at an excessive rate of speed under the circumstances and, while so driving his vehicle, that Simon drove in the west lane of travel and that such acts were the proximate cause of the accident and the injuries suffered by Simon and that such negligence by Simon contributed to the accident and precludes any recovery from Woodland.

Woodland's first claim is that Simon was traveling at an excessive rate of speed which was the proximate cause of the collision with the haystack mover. Section 39–09–01, N.D.C.C., provides:

"Any person driving a vehicle on a highway shall drive the same in a careful and prudent manner having due regard to the traffic, surface and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway in a manner to endanger the life, limb, or property of any person."

Section 39–09–02, N.D.C.C., provides that it presumably shall be lawful to drive at a speed of 60 miles per hour upon a rural highway "unless otherwise permitted, restricted, or required by conditions".

There is limited evidence in the case at bar concerning the speed at which Simon was driving his vehicle. Simon testified that after he left his farm and prior to meeting any vehicles on the road, he was driving at a speed of about 50 miles per hour and when he met the Jeep being driven by Mrs. Woodland and the tractor being driven by Woodland, he slackened his speed to between 30 and 40 miles per hour. Mrs. Woodland testified that she could not estimate the speed of Simon's vehicle, but stated that it went by her "so fast". Woodland testified that Simon was driving at a speed of about 60 miles per hour at the time of the accident. Considering the evidence submitted in support of the speed that Simon was driving at the time of the accident, we find that Simon was not driving in excess of the maximum speed limit as provided by law.

■ Woodland's claim of Simon's excessive speed is general in nature; therefore it is necessary to consider whether any speed under the maximum limit could be excessive under the circumstances. A condition of the right to drive at the maximum statutory speed is freedom from obstruction of the view ahead. Wisnewski v. Oster, 110 N.W.2d 283 (N.D.1961).

The propriety of any rate of speed cannot be fixed by any definite number of miles per hour, but what is a reasonable speed is necessarily dependent largely on the situation and surrounding circumstances. The driver of a motor vehicle at night in the dark is required to exercise care commensurate with the situation. A speed which might be reasonable and proper under ordinary circumstances may be excessive and improper where the driver's view of the highway is in any way interfered with, as where he is confused or partly blinded by the headlights of an approaching vehicle or by sunlight, or by a street light, or where he is driving through fog, smoke, dust, or snow; or his windshield is covered with sleet, snow, frost, or rain. The speed is excessive whenever it places the car beyond the control of the driver. Schaller v. Bjornstad, 77 N.D. 51, 40 N.W.2d 59 (1949).

In 2 Blashfield Auto Law 3rd Ed. § 105.3, p. 302 (1965), it is stated:

"Among the circumstances to be considered in determining whether or not a particular rate of speed was negligent are the nature, width, and grade of the road, the condition of the roadway, the locality, traffic conditions, weather conditions, the driver's familiarity with the road, and the condition of the car."

A perusal of the record reveals that on the night of the accident, the sky was partly overcast; it was dark at the time of the accident, but there was no rain, snow or fog; visibility was good. The road was dry, but traffic did not cause any dust. This farm-to-market gravel road was 24 feet wide and level in both directions so that the view was unobstructed for vehicles approaching the scene of the accident. The road contained four distinct tracks, two for each lane of traffic traveling in opposite directions, and without a gravel ridge on the road which would obstruct travel within those tracks. Simon, Mrs. Woodland, and Woodland testified that they did not see any other vehicles on the road prior to the accident. Also, it is important to note, the Simon vehicle approached and passed without difficulty both the Jeep driven by Mrs. Woodland and the tractor driven by Woodland, prior to colliding with the unlighted projecting corner of the haystack mover. After reviewing the record, where Simon was driving at a speed of less than 60 miles per hour, we find that the evidence does not support a conclusion that such speed was excessive and would constitute negligence on his part.

Other related rules of law should be considered with respect to the right to drive at a maximum rate of speed; that is: whether a driver is negligent in failing to keep a proper lookout, whether a driver is negligent in failing to keep his vehicle under control, and whether a driver is negligent in failing to stop or turn to the right within the assured clear range of his vision. In Tschosik v. Meier, 110 N.W.2d 97 (N.D.1961), Meier assigned as specifications of error, in essence, the application of these three rules in support of the fact that Tschosik was contributorily negligent. The facts in the Tschosik v. Meier case are similar to those in the case at bar. The accident occurred at night on a gravel road which was 18 feet wide. Tschosik was driving in a southerly direction at a speed of about 35 miles per hour, and Meier was driving in a northerly direction at a slow rate of speed. The Tschosik vehicle passed Meier's tractor without any difficulty, but collided with the protruding side of the unlighted silage box which was being towed by the tractor. This court found that the evidence supported the verdict of the jury and concluded that the conduct of Tschosik was not such that it could be said that he was guilty of contributory negligence as a matter of law.

In the instant case, the evidence does not support a conclusion that Simon failed to have his vehicle under control. In fact, the evidence is to the contrary. Simon did not have any difficulty in passing either

the Jeep or the tractor. Woodland testified that Simon's vehicle passed his tractor with a clearance of about five feet, and he also testified that he did not hear the sound of brakes or skid noises prior to the impact of the collision.

■■■■■ The rule that one must drive at such a speed as to be able to stop within the assured clear distance ahead is recognized as an imperative duty of a driver. Doll v. Treiber, 76 N.W.2d 910 (N.D.1956); Schaller v. Bjornstad, 77 N.D. 51, 40 N.W. 2d 59 (1949). This rule applies where cases deal with large objects, such as other motor vehicles, easily seen, and on the open road. A driver must anticipate such objects, lighted or unlighted, carefully or negligently driven or parked, and guard against collision with them. He must see such obstruction as a careful person would have seen. Schaller v. Bjornstad, *supra*. We feel that this rule is not applicable to the facts in the case at bar. There is quite a difference where a vehicle traveling in the same direction collides with a large discernible object directly in the path of travel; and where vehicles are traveling in opposite directions and one vehicle collides with something projecting from the other vehicle or from a unit being towed by the other vehicle.

■■■■■ The rule as to maintaining a proper lookout is that a driver's duty is not limited to seeing only what is in plain sight on the highway; but he has a duty to see what is in plain sight within the range of his vision, in the same manner that a reasonably prudent man, in the exercise of ordinary care, under similar circumstances, should have seen. Wolf v. Northern Tank Lines, Inc., 113 N.W.2d 675 (N.D.1962); King v. Railway Express Agency, Inc., 107 N.W.2d 509 (N.D.1961); Moe v. Kettwig, 68 N.W.2d 853 (N.D.1955).

■■■■■ Simon's testimony is that, as he approached the two vehicles coming from the opposite direction, he dimmed his lights and passed the first vehicle, the Jeep driven by Mrs. Woodland, then passed the tractor driven by Woodland, and the accident occurred. Based upon the position of the vehicles after the accident, the markings on the roadway, and the testimony of Woodland, Simon did not attempt to turn his automobile to the right or even to apply his brakes. Considering these facts, two conclusions can be drawn: either Simon failed to maintain a proper lookout in that he did not see what he should have seen; or Simon was placed in such a situation that no matter how careful he was in maintaining a proper lookout it would have been impossible for him to see the projecting haystack mover until it was too late to take evasive action to avoid a collision. The latter conclusion is more reasonable under the circumstances. The accident occurred at night. It was dark, and, where one vehicle approached another vehicle coming from the opposite direction, both vehicles having their lights illuminated, the range of vision directly behind the shining headlights was nearly zero. An exception would be where objects could be seen because they were properly illuminated by lamps or reflectors. The haystack mover was not equipped with lamps or reflectors which could have been seen by a driver approaching from the opposite direction. The silhouette of the baled, matured hay and the haystack mover would not be revealed behind the shining headlights of the tractor. Under these conditions, especially where the projecting haystack mover did not have any lamps or reflectors to give warning of the protruding corner, Simon's lookout was that of a reasonably prudent man and his conduct was not such as to import negligence on his part. For the purpose of argument it might be said, because Simon resided in a farming community, that where he assumed that the second vehicle was a tractor, he should have anticipated that the tractor was towing equipment of excessive width. However, one who travels upon a public highway has the right to assume that such highway will not be obstructed unlawfully, or in such a manner as to cause injury to him while he

himself is in the exercise of reasonable care. Spielman v. Weber, 118 N.W.2d 727 (N.D.1963); Umland v. Frendberg, 63 N.W.2d 295 (N.D.1954). This being the law, Simon would not have to anticipate that Woodland, who was driving a tractor, would be towing an unlighted haystack mover which should not have been on the highway at night, and which haystack mover projected laterally to the left of the tractor, especially where Simon, upon maintaining a proper lookout, would not see it within his path of travel until it would be too late to take evasive action to avoid an accident.

Woodland also urges that Simon was driving his vehicle over the center line of the roadway and that Simon's negligence was the proximate cause of the accident. Woodland builds his case around the geographical center line. His argument is based also upon a measurement that the top of the roadway was 26.6 feet wide, and not upon the 24-foot measurement made by the highway patrolman. It may be noted that the 26.6-foot measurement includes the graveled portion of the road, plus the grass-covered shoulders up to a point at which the level portion of the shoulders begins to slope toward the ditches. Both §§ 39–10–08 and 39–10–09, N.D.C.C., use the term "roadway", which is defined in subsection 52 of § 39–01–01, N.D.C.C., as that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder. However, notwithstanding this incorrect assumption, we must determine from the evidence whether Simon's vehicle, at the time of impact, was over the center of the roadway. It has been contended that a measurement taken by the highway patrolman shows that Simon's vehicle was over the center of the traveled portion of the roadway. Patrolman Willenbring's testimony as to this measurement is as follows:

"Q Now, coming back again, did you find some skid marks left by the plaintiff's vehicle?

* * * * * *

"A Yes, I did.

"Q And what did you find?

"A There was a skid mark which tied in with the position of the—final position of the vehicle. I didn't get no length, *distance of the skid mark because of traffic and—foot traffic in the area.* But I was able to establish the position of the skid mark in relationship to the roadway. [Emphasis added.]

"Q And where were they in relation to the road itself?

"A They were 11 feet from the west shoulder.

"Q And you're speaking now of the left or west wheels of the plaintiff's vehicle?

"A That is correct.

"Q And then, of course, in addition to that, would be the whatever overhang there was of the fenders?

"A There would be some, yes."

Then, on cross-examination, he testified:

"Q Now, Mr. Willenbring, I think you indicated that by the time you arrived there had been various other people in the area; isn't that right?

"A Yes.

"Q And the area had been walked over, you could see where it had been scuffed over by people; is that right?

"A Yes.

"Q Were there also piles of hay in the particular area of this collision?

"A There were bales knocked off of the stack.

"Q And it was, as a practical matter, difficult to determine any skid marks; isn't that correct?

"A Yes.

"Q But you've testified that there was a skid mark 11 feet from the west shoulder; is that right?

"A Yes, this was made—this was visible ahead of the tractor.

"Q That would be somewhere to, in other words, to the south of the tractor?

"A That is correct."

From this testimony it is clear that the skid mark was south of the point of impact. How far south we are unable to determine. Therefore, based upon this conclusion and the fact that the point of impact would be a more accurate indicator to determine where Simon's vehicle was in relation to the center of the traveled portion of the roadway, it is necessary to review that evidence.

We have concluded above that the left front corner of the haystack mover extended 19.8 inches into Simon's lane and, together with this fact, the only other evidence which might reveal where Simon's vehicle was in relation to the center of the roadway, is the testimony of Woodland, Bower, Willenbring, and Erhardt.

Woodland's testimony as to the overlap of Simon's vehicle and his haystack mover is as follows:

"Q And where was the car, that is, the car of the plaintiff, in relation to the haystack mover, how far in did it go on the haystack mover when it collided?

"A Well, it was a foot to fifteen, sixteen inches, somewheres around there.

"Q Did you say a foot to sixteen inches?

"A Yes."

John L. Bower testified as follows:

"Q Could you tell us how far in feet that you would estimate that the car was in on the haystack mover, where the two came together?

"A Well, if it was for an estimation, I would say just about the width of that pulley, which is I suppose about 15 possibly 18 inches, I don't know."

Robert Willenbring, the highway patrolman, did not take a measurement of the overlap, but testified as follows:

"Q Now, with reference to the point of impact of the two vehicles, did you look at that?

"A Yes.

"Q And can you give us your best estimate as to how much of the two vehicles came together; in other words, how far to the west from the left rear corner on the hay mover could you find imprint of the vehicle of the plaintiff?

"A The hay mover struck about two feet the left corner of the—

"Q So there would be an overlap as the two came together of about two feet?

"A Yes."

Matt L. Erhardt, a highway patrolman who was at the scene of the accident, but not in charge of investigating and reporting the same, testified as follows:

"Q Did you make any measurements of the haystack mover, itself?

"A I did one.

"Q What was that measurement that you made?

"A That was the stack itself, the portion of the stack frame itself that was connected with the vehicle itself—the overlap."

Then he testified that the overlap was 1.9 feet and then went on to say:

"Q Now, was there any damage to the haystack mover beyond this measurement point of 1.9?

"A Just scrapes and scratches to the left of the pulley itself."

The overlap of the two vehicles, based on this evidence, ranged from one foot, or 12 inches, to about two feet, or 24 inches. Assuming the maximum of 24 inches and subtracting the 1.65 feet, or 19.8 inches, the extreme limit which Simon's vehicle could have been over the center of the roadway would be 4.2 inches. Considering the measurement of Erhardt of 1.9 feet (the only actual measurement) and subtracting the 1.65 feet, Simon's vehicle could possibly be $^{25}/_{100}$ of a foot, or 3 inches, over the center line. This is not to ignore the testimony of Patrolman Willenbring with reference to the overlap. Both of these calculations fail to take into consideration the spreading and flattening of the fender of the car as the result of the impact and thus causing wider damage marks, not necessarily indicating the actual overlap just prior to the impact, which overlapping would be considerably less, especially in view of the fact that the pulley projected approximately 6 inches beyond the left front corner of the haystack mover frame. Both Woodland's and Bower's testimony is based upon viewing the damage to the Simon vehicle and provides a better determination of Simon's position in relation to the center of the roadway. Both of the patrolmen's measurements are based upon scratch damage to the haystack mover.

 Under these circumstances, and especially in light of the fact that Simon met and passed both the Jeep and the tractor without difficulty, even if we could assume that Simon's vehicle was over the center of the roadway by several inches, we find that his being over the center line, although a violation of § 39–10–09, N.D.C.C., was not a proximate cause of the accident. The fact of being over a center line of the traveled portion of a graveled roadway without a permanent marking as to the location of the center line would be an unusual standard to impose upon a driver, especially where, on graveled roads, the drivers follow the worn tracks made by the continuous travel of vehicles on such road and that, under this practice, the center of the roadway, as discussed above, might lie within one of those tracks.

We find that the sole proximate cause of the collision between Simon's vehicle and the left front edge of Woodland's haystack mover was the failure of Woodland to place lamps or reflectors on the extreme left projecting edge of his haystack mover, so as to give warning to a driver of a vehicle approaching from the opposite direction, and that Woodland was improperly on the highway at night towing a haystack mover of excessive width, which mover projected over the center line of the traveled portion of the roadway.

For reasons stated herein, we conclude that the defendant has failed to sustain the burden of proof that Simon was negligent or, if negligent, that his negligence was significant enough to constitute a proximate cause of the collision. As we have reformed the instruction previously held proper to be given a jury relative to contributory negligence so as not to mislead a jury into believing that negligence contributing in the slightest degree to an accident may be sufficient basis for finding proximate cause, we should also be wary of falling into such legal quicksand as would cause us to throw out a legitimate claim for negligence contributing only to the slightest degree. Willert v. Nielsen, 146 N.W.2d 26, ¶ 4 of syllabus (N.D.1966); Spalding v. Loyland, 132 N.W.2d 914 (N.D. 1965).

 Having determined that the judgment of the trial court should be reversed, it is necessary to consider the question of damages. The North Dakota Supreme Court, in Wanna v. Miller, 136 N.W.2d 563 (N.D.1965), remanded a case to the trial court for the determination of damages alone. We adhere to the rule enunciated in that case. This court is basically an appellate court and since the trial court has not yet made its decision, the case should be returned to it for consideration.

The trial court may determine damages from the evidence already submitted during the trial, or entertain a new trial on the issue of damages alone. When the option is exercised by the district court, any party deeming himself aggrieved may appeal from the judgment entered thereon as from any other judgment.

Without discussing the dissent filed in this case in detail, we make this observation: When the width of the haystack mover, which was approximately 17½ feet, is taken into consideration with the length of such haystack mover, which is 26.1 feet, the testimony of Ralph Woodland that the hay on the mover was loaded at least 9 bales high, and that the platform of the haystack mover on which the bales were loaded was 2.7 feet above the ground, and that the loaded hay weighed from 12 to 14 tons, it is incredible that a farmer would be traveling on a highway at night towing a haystack mover with its right (west) dual wheels in a ditch nearly 2 feet in depth, because of the great probability that a shifting load would cause not only the haystack mover but the tractor to overturn.

The judgment dismissing the claim of the plaintiff, Clement Simon, is reversed and the case is remanded to the district court for a determination of damages in accordance with this opinion.

ERICKSTAD and KNUDSON, JJ., concur.

TEIGEN, Chief Justice (dissenting).

I dissent. This is a personal injury action which was tried to the court without a jury and an appeal has been taken from the judgment to this court under Section 28-27-32, N.D.C.C., for trial anew of the questions of fact in the entire case.

The trial court, which had the benefit of seeing and hearing the witnesses as they testified at the trial, found that both parties had been negligent and that the negligence of each was a proximate cause of the colli-sion which resulted in the plaintiff's injuries. It therefore dismissed the plaintiff's claim. The findings of fact of the trial court are entitled to appreciable weight on an appeal, triable de novo, in this court. Campbell v. Beaton (N.D.1962), 117 N.W. 2d 849.

The majority have found that the sole proximate cause of the collision which injured the plaintiff consisted of three acts of negligence on the part of the defendant. They are as follows: (1) improperly moving on the highway at night a haystack mover of excessive width; (2) failure to place lamps, or reflectors, on the extreme left projecting edge of the haystack mover; and (3) causing the haystack mover to project over the center line of the traveled portion of the roadway. The majority have also found that the plaintiff drove his automobile partially over the center line of the traveled portion of the roadway but conclude that, if this was negligence, it was not significant enough to constitute a proximate cause of the collision. They premise this conclusion on their finding that the parties were traveling on a graveled roadway without permanent marking as to the location of a center line and, therefore, drivers follow the worn tracks made by the continuous travel of vehicles and "under this practice, the center of the roadway, as discussed above, might lie within one of those tracks." For these reasons, they conclude that the defendant has failed to sustain the burden of proof that the plaintiff's negligence contributed to his injuries.

I do not agree. The record in this case does not establish the location of the worn tracks made by continuous travel except as they may be observed from photographs in evidence. The photographs of the accident scene portray an evenly balanced, well-maintained roadway showing two sets of tracks. These tracks appear to be equidistant from each edge of the roadway. No evidence was introduced of measurement of these tracks. The action was tried on the theory that the geographical center line was also the center line of the main

traveled portion of the roadway. To state, as the majority have, that the center of the roadway "might lie within one of those tracks," is obviously a speculation. I find no evidence upon which to base such an inference.

The left front corner of the haystack mover was about 1½ feet east of the geographical center line of the roadway after it came to rest following the accident. This fact is based upon measurements made by the state highway patrolman. This is also the approximate position which the majority found the entire left side of the haystack mover to be in when the collision occurred. The majority found that the haystack mover was being driven parallel to the road, 1.65 feet over the center line, at the time of the collision. The majority have failed to take into account that the force of the impact caused the haystack mover to pivot toward the left on its centrally located wheels. Following the accident, the haystack mover was standing at an angle, facing southeasterly, and the defendant's tractor, to which it was attached by a drawbar, was facing southwesterly. Thus the movement of the front end of the haystack mover toward the left pulled the rear end of the tractor also toward the left. Because the haystack mover was attached by a drawbar to the rear end of the tractor, the rear of the tractor and the front of the haystack mover moved together in the same direction and the same distance. In other words, the tandem hookup of the tractor and haystack mover caused these two implements to jackknife. The haystack mover had two sets of dual wheels which were located about midway and were set in about 2½ feet from its sides. It pivoted on its centrally located wheels. Thus the rear end of the haystack mover moved toward the right and the front end moved toward the left. The highway patrolman measured the distance from the left front of the haystack mover to the east edge of the roadway. This distance was 10½ feet and the distance from its left rear corner to the east edge of the roadway was 18 feet. Thus the left front corner of the haystack mover, when it came to rest after the accident, was located about 1½ feet over the geographical center line and the rear left corner of the haystack mover was located 7 feet west of the geographical center line. The evidence establishes that the haystack mover and the tractor were traveling parallel to the center line of the roadway before the accident. Because of the pivoting movement of the haystack mover when struck on its left front corner by the plaintiff's automobile, the ends of the haystack mover moved in opposite directions. Therefore, it may be more logical to reconstruct the position of the haystack mover on the roadway before the accident by adding the distances of the left front and rear of the haystack mover from the edge of the highway and dividing this sum by 2. Thus, 18 feet plus 10½ feet equals 28½ feet, and divided by 2, equals 14¼ feet. This point is 2¼ feet west of the geographical center line of the roadway. This figure is not, perhaps, entirely accurate for the reason that the force of the plaintiff's automobile may also have driven the defendant's haystack mover and tractor backward a short distance.

The reconstruction of the position of the defendant's equipment upon the roadway before the accident, as set forth above, reasonably harmonizes with other measurements made by the state highway patrolman. These measurements relate to the location of the front end of the tractor after the accident. It also harmonizes with various photographs introduced in evidence. As I stated earlier, the force of the impact caused the defendant's tractor and haystack mover to jackknife. This is not disputed and is graphically portrayed by the photographs in evidence. The tractor did not pivot as did the haystack mover because the tractor had two wheels located at the rear and two wheels located at its front, whereas the haystack mover had one axle with wheels centrally located. The force of the pivoting movement of the haystack mover caused the rear wheels of the tractor to slide, or skid, toward the left and the front wheels to remain relatively stable on the road. Photographs in evidence of the accident scene clearly show that the right front wheel of the tractor was at the extreme

west edge of the 24-foot roadway after the collision. This fact is also confirmed by measurements taken by the highway patrolman. He measured the distance from the east edge of the roadway to the outside of the left front wheel of the tractor. He testified that this distance was 18½ feet, which is a point 6½ feet west of the geographical center line. The distance between the outer edges of the front wheels of the tractor was 5 feet, 5 inches. Therefore, adding 6 feet, 6 inches, to 5 feet, 5 inches, equals 11 feet, 11 inches, and establishes that the outside of the right front wheel of the tractor was within one inch of the extreme west edge of the roadway. These facts are important in determining the location of the haystack mover with respect to the roadway prior to the accident. The defendant's equipment was being moved parallel with the center line before the accident. The haystack mover was 17.5 feet in width. It had a drawbar in the front center attached to the tractor at its rear center. Therefore, establishing a point by taking one-half of the width of the front of the tractor, equaling 2 feet, 8½ inches, and extending a line from that point to the rear of the tractor where the haystack mover was attached, and adding to that figure 8 feet, 9 inches (one-half of 17.5 feet, the width of the haystack mover), equals 11 feet, 5½ inches. This would be the approximate distance of the east edge of the haystack mover from the west edge of the roadway.

In addition to the evidence alluded to above, another set of measurements indicate that the haystack mover was on its one-half of the roadway at the time of the accident. The dual wheels under the center of the haystack mover were located 2½ feet in from the outer edges of the haystack mover. The dual wheels were 1½ feet in width. An exhibit prepared by a civil engineer, who investigated the accident scene at a later date, was introduced in evidence. It shows that the inside edge of the right dual wheels of the haystack mover were on the shoulder 2½ feet west of the west edge of the roadway. This evidence places the east edge of the haystack mover 11 feet from

the west edge of the 24-foot roadway before the accident.

In addition to the foregoing evidence, there were two witnesses who were at the accident scene while the vehicles were still in position. They also testified to the position of the right dual wheels of the haystack mover after the accident in relation to the maintained portion of the roadway. Each had looked under the haystack mover and observed that the right dual wheels of the haystack mover were standing on the shoulder of the roadway. One witness estimated that the inside of the duals were 20 inches from the maintained portion of the roadway, and the other estimated the distance as being from 20 to 24 inches. The outside of the dual wheels were 2½ feet from the outer edges of the stack mover and the duals were 1½ feet in width. Therefore, it appears logical to conclude that the sum of the measurements given above subtracted from the width of the stack mover (17½ feet), equals the distance the stack mover extended over the maintained portion of the roadway, measured from the west edge of the roadway. Thus, 20 inches plus 2½ feet, plus 1½ feet, equals 4 feet, 20 inches. Seventeen and one-half feet minus 4 feet, 20 inches, equals 11 feet, 10 inches, the distance the stack mover projected over the west portion of the roadway. This is less than one-half of the roadway, which is measured as being 24 feet in width.

The majority have based their calculations on a rib mark made by the right rear wheel of the tractor as a starting point and conclude this mark is evidence of the position of the tractor prior to the accident. They have failed to give any weight to the evidence I have alluded to. I do not agree that the evidence of the rib mark establishes this mark as the position of the tractor prior to the accident. If one accepts this premise, I wonder how does one explain that the right front wheel of the tractor was positioned immediately adjacent to the west edge of the roadway even after the accident. It is my opinion that the rear wheels of the tractor were pulled to the left by the stack mover and that the rib mark was

**438**

made by the sideward movement of the tractor as it was pulled to the left by the pivoting movement of the haystack mover. I am of the opinion that the position of the front wheels is a much weightier fact upon which to base an inference as to the position of the tractor before the accident than the rib mark of the rear wheel accepted by the majority.

It appears to me that the above evidence is determinative of this case. It is my opinion that the defendant was driving his tractor and haystack mover on his one-half of the roadway. I agree that the defendant was negligent in moving, upon the highway, an illegal load of excessive width in the nighttime. Although it would not absolve him of the violation of moving an illegal load, it was also negligence not to have clearance lights upon his wide load. This negligence, however, was not a proximate cause of the plaintiff's injuries. The plaintiff collided with the left front corner of the defendant's haystack mover. I agree with the majority that the plaintiff was driving over the center line of the roadway but find that he was farther over the center line than indicated by the majority. Had the plaintiff driven his automobile upon the right half of the roadway, no collision would have occurred and the plaintiff would not have been injured. It is my conclusion that the plaintiff has failed to sustain the burden of proof that the defendant's negligence was a proximate cause of the accident. If, however, the defendant's negligence (the wide, unlighted load) was a proximate cause of the plaintiff's injuries, it is then my opinion that the plaintiff's injuries resulted from the concurrent negligence of both the parties and that the negligence of each was the proximate cause of the plaintiff's injuries.

For these reasons I would affirm the judgment of dismissal.

The majority reverse the judgment of dismissal and remand the case to the district court for a determination of damages. The case was fully tried to the district court and evidence on the question of damages was adduced. This appeal was taken under Section 28–27–32, N.D.C.C., which statute is normally referred to as the "trial de novo" statute. This statute, in part, provides:

"The supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, and shall finally dispose of the same whenever justice can be done without a new trial, and shall either affirm or modify the judgment or direct a new judgment to be entered in the district court."

The appellant in this case has demanded a trial of the entire case in this court. Under such circumstances, it appears to me that, unless we grant a new trial, to do justice this court shall "finally dispose of the same" and "shall either affirm or modify the judgment or direct a new judgment to be entered in the district court." This includes finding the damages. I find no provision in the statute which authorizes this court to direct the lower court to make a new finding on a matter which was fully submitted to it but on which it did not find because it dismissed the action. The "de novo" statute does not allow this court to grant a new trial for this reason. It states, in part:

"In actions tried under the provisions of this section, failure of the [trial] court to make findings upon all the issues in the case shall not constitute a ground for granting a new trial or reversing the judgment." Section 28–27–32, N.D.C.C.

I find no provision in the statute which allows this court to decide one issue on an appeal taken de novo and remand another issue to the trial court for determination without a new trial being ordered. I believe that the onus is on this court to determine the amount of damages from the evidence of record in this case. I am cognizant of Wanna v. Miller (N.D.1965), 136 N.W.2d 563, in which we made a similar disposition, but I feel that we erred in so doing and the error should not be perpetuated.

STRUTZ, J., concurs.